**UNION TANK CAR COMPANY, a corporation, Plaintiff,**

v.

**LINDSAY SOFT WATER CORPORATION OF OMAHA, INC., a corporation, and Northwestern Bell Telephone Company, a corporation, Defendants.**

**Civ. No. 02178.**

United States District Court
D. Nebraska.
July 5, 1966.

**512**

Robert Spire, Omaha, Neb., for plaintiff.

Truman Clare, Omaha, Neb., for defendant Lindsay Soft Water Corporation of Omaha, Inc.

Edward Sklenicka, Omaha, Neb., for defendant Telephone Co.

## MEMORANDUM

ROBINSON, Chief Judge.

This action was instituted by Union Tank Car Company, a New Jersey corporation with its principal place of business in Chicago, Illinois, against Lindsay Soft Water Corporation, of Omaha, Inc., a Nebraska corporation with its principal place of business in Omaha, and the Northwestern Bell Telephone Company. The complaint alleges breach of contract, unfair competition and violation of the trademark laws [specifically, 15 U.S.C. § 1114].

Jurisdiction exists by reason of diversity of citizenship with an amount in controversy exceeding ten thousand dollars, exclusive of interest and costs.

Although the trial of this matter was somewhat protracted, the facts developed therein are relatively simple due to the repetitive nature of much of the testimony.

Union Tank Car Company [Union] manufactures and distributes water conditioning equipment through its Lindsay division. The trademark Lindsay and the trade name The Lindsay Company are registered in the United States Patent Office under registrations 752,957; 753,314; and 769,155. Much of the distribution of water softeners is handled through franchise agreements with various dealers throughout the country. These dealers are given the exclusive right to sell Lindsay products in a certain area, and are also allowed to display and advertise the registered name of Lindsay. This arrangement is apparently quite similar to that found in a great many businesses with nationwide distribution.

The Lindsay division of Union [either under its former separate corporate entity status or as the present division of

Union] has dealt with Ralph Heaton since approximately 1950. Heaton acted as a proprietorship for some time and has incorporated his business with the present defendant. Various agreements have been entered between these two principals, with the last such agreement being dated January 18, 1963. The latter agreement provides, inter alia, that defendant shall advertise itself as a Lindsay dealer, purchase at least 50 water softeners each month, cease to use all of Lindsay's names upon termination of the agreement and that the agreement is terminable by Union if the quota requirements are not met.

The evidence clearly establishes that notwithstanding some purchases of water softeners from Texas by the defendant which were to apply on the quota, defendant did not come close to filling its quota requirements of 50 units a month from July of 1963 to December of that year. Accordingly, Union notified the defendant in February of 1964 that the Omaha franchise agreement was to be cancelled.

However, Soft Water continued to use the name Lindsay in its corporate name and in its advertising. The name Lindsay was used on some occasions to set up interviews for possible sales. The evidence also developed the fact that Soft Water sales personnel had represented to customers not only that they were authorized Lindsay personnel but that they were selling Lindsay products. As a result of this procedure, Water King water softeners [defendant Soft Water entered into an agreement with Borgerud Manufacturing Co. to promote and sell Water King water softeners] were delivered to customers who believed they were receiving Lindsay models. Thus the name Lindsay was used on a number of occasions to assist in the sale of another product which was in fact represented to the customer to be a Lindsay product.

Soft Water introduced the testimony of a few sales personnel to contradict this evidence of palming off, but we are satisfied from the testimony of the consumers in this action that spurious merchandise was purposely palmed off as Lindsay products.

Soft Water also introduced a rather lengthy line of testimony from various dealers across the country who had or have dealt with Union and who have not found themselves to be very tightly controlled in their use of the name Lindsay. Some testimony indicated that on occasion a dealer has continued to use the Lindsay name after having been cancelled or that the name was used in the absence of any written agreement and so on. This evidence adequately establishes the fact that Union, at least on these occasions, was not overly zealous in policing all of the dealers with whom its operations may have touched at one time or another.

There are a few facts in this case which are more logically set out with the discussion of the law herein and have therefore been set aside until later. However, the foregoing is a recitation of the basic facts upon which this lawsuit depends and which were adduced in the evidence before this Court.

Under the facts herein as we find them, there is no question that Union would be entitled to relief. All three theories-breach of contract, unfair competition [both common law and federal, 15 U.S.C. § 1125[a], and violation of trademark [15 U.S.C. § 1114]—have been sustained and would allow injunctive relief.

The contract between the parties provided specifically that upon termination of the agreement, Soft Water would cease to use the name Lindsay in connection with its place of business or in its advertising. It goes without saying that a party may obtain injunctive relief to stop and prevent such continued use after the cancellation of the agreement. When parties have entered such an agreement, the courts will enforce it.

The use of the name Lindsay as was done here by Soft Water or its agents to deceive potential consumers into believing that Lindsay products were being shown and sold is obviously unfair

competition. 15 U.S.C. § 1125[a] provides:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

■ It is improper for a person both to mislead the public into believing that he is an authorized dealer of a reputable concern, Ford Motor Co. v. Helms, [E.D. N.Y., 1938] 25 F.Supp. 698; Volkswagenwerk GmbH v. Frank [D.Colo., 1961] 198 F.Supp. 916; and to utilize such concern's trademarks in its advertising, sales kits, etc., Admiral Corp. v. Price Vacuum Stores [E.D.Pa., 1956] 141 F.Supp. 796; Simmons Co. v. Baker [D.Miss., 1961] 200 F.Supp. 149, aff'd. 307 F.2d 458. It is clear that in the present case the defendant has been guilty of unfair competition.

With respect to the violation of the Lanham Act, 15 U.S.C. § 1114, the plaintiff has also established the necessary preponderance of the evidence. 15 U.S.C. § 1114 provides, inter alia, as follows:

"(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods

or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints * * * or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided. * * *"

■ Section 1116 of 15 U.S.C. provides the authority to allow injunctive relief for a violation of the federal trademark laws and § 1117 of 15 U.S.C. provides the authority for the Court to grant damages "for such sum as the court shall find to be just, according to the circumstances of the case." As we have already mentioned, it is clear that the defendant has used the plaintiff's registered name to deceive, or at least to confuse, the public. We have no question that the plaintiff is entitled to injunctive relief and damages.

Having seen the basis for allowing relief to Union, we shall now discuss the defenses raised in this action. Soft Water has outlined its defenses in its brief and we shall follow that outline in our discussion.

■■ Soft Water first alleges that no binding contract existed between the parties. The contract contained a provision that Soft Water would not contest the trademark registrations of Lindsay and it is claimed that this is against public policy and the contract is therefore rendered void. The agreement itself provides that if any part of the agreement is held to be void for any reason, the remainder of the contract will still be enforceable. This statement in the agreement is merely an expression of a rule of law which needs no citation of

authorities. The fact that one part of an agreement may be void or unenforceable does not render void the entire agreement. Therefore, by virtue of the agreement itself and of said rule of law, there is no reason that we should declare that this entire contract is void in consequence of one potentially offensive proviso.

The contract also contained a provision that it would not be effective until signed by an authorized executive of Lindsay. As a matter of fact, the agreement was signed by Ralph Heaton on behalf of the defendant and never signed by an executive of the plaintiff. It is also true that there was some confusion as to the identity of the parties to the agreement. Ralph Heaton was described as operating a proprietorship rather than as an executive of defendant corporation, and Lindsay was not clearly described as being a division of Union.

■ We find, however, that despite the defects found in this written agreement, the parties did have a valid and binding contract. Both parties were aware of the identity of the party with whom they were dealing. This is obvious from the many years of association—about 13 years—prior to the entering of the agreement on January 18, 1963. And after that date, both parties acted under the contract and accepted the provisions thereof. We must therefore find that even if the contract was invalid at its inception, the parties subsequently ratified and accepted the written instrument as their agreement and were both bound by it. This was clearly the intention of the parties and we do not believe that Soft Water should now be allowed to claim that a clerical mistake [the evidence tended to show that the contract was improperly filed by a secretary before having been signed] and sloppy draftsmanship void an agreement under which both parties acted and considered themselves to be bound.

■ In any case, the provision was for the benefit of Union to protect it against acceptance of a dealership agreement without the knowledge of an executive. We find that this provision has been waived and under the circumstances cannot be considered to be a condition precedent to the validity of the contract. It is elementary law that only the party to be charged need to have signed the contract in the absence of some agreement to the contrary. Restatement of Contracts, § 211. We are convinced that the parties here had a meeting of the minds, that both intended that a contract be entered, and that a binding contract between the parties did, in fact, exist.

■ Defendant contends that there was no reason to cancel the contract. Suffice to say, as above, that defendant was falling far short of its quota requirements and plaintiff was well within its rights in cancelling the franchise agreement.

■ Soft Water contends that inconsistent acts by plaintiff reaffirmed the contract after the cancellation. It is true that Soft Water was apparently left on Union's mailing list after the cancellation and received brochures, advertising, and other literature from Union. In fact, Soft Water was not removed from Union's books until quite some time after the cancellation. This, however, is no reaffirmance of a contract. It is more an indication of poor record keeping and lack of communication between Union's departments. We find that these inconsistent acts on the part of Union were in no way a reaffirmance of the contractual obligations with Soft Water.

■ Defendant contends that Union has abandoned its trademark by naked licensing throughout the country. In support of this allegation, defendant brought in dealers from various parts of the country who had used or were using the Lindsay name in violation of their franchise agreement or without permission of any kind. But we have no indication in this regard that plaintiff has ever allowed anyone to manufacture water softeners and place the Lindsay name thereon. There has been no abandonment of the name insofar as it is an indication of the origin of the product.

Section 45 of the Lanham Act [15 U.S.C. § 1127] defines abandonment as follows:

"A mark shall be deemed to be 'abandoned'—

(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment.

(b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin."

Under the above statutory definition, we can see no reason to find an abandonment here. Surely plaintiff did not discontinue use with an intent not to resume. Nor can we say that the mark has lost its significance as an indication of origin. The fact that certain dealers are using the name does not mean that the origin of the products has become confused. The evidence does not establish Lindsay's knowledge of and subsequent indifference to unfair use of the Lindsay name. We are satisfied that although Union may not have had the most effective policing network possible, it has exercised sufficient control over the use of its name so as not to be deemed to have forfeited the rights to its exclusive use. It would be a black day for manufacturers of nationally distributed products if we were to hold to the contrary.

■ In any case the fact that Soft Water entered into this franchise agreement with Union, thereby recognizing the validity of the trademarks at least for the purposes of the contract, estops it from now claiming that the trademarks are not valid. Defendant cannot on the one hand acknowledge the validity of the trademark and on the other hand [when it becomes convenient] claim that the trademark is not valid and cannot be enforced because of abandonment. The contract itself is enough reason that this defense cannot be allowed. Regardless of the actions of plaintiff with respect to its trademark in its dealings with other distributors, defendant specifically agreed not to use the Lindsay name if the contract were cancelled. This is part of the agreement between the parties and renders evidence of the activities of other dealers completely irrelevant and immaterial. The agreement between these parties is embodied in the written document.

Therefore, we find that plaintiff has not abandoned its trademark and that even if it had, Soft Water could not claim that the trademark had been abandoned. The doctrine of estoppel is applicable here.

We find no merit in defendant's analysis and discussion by way of a defense to the theory of unfair competition. We find that the evidence amply supports the allegations of the plaintiff in that regard.

Soft Water contends that the Court cannot assess damages and cannot order injunctive relief.

■ It is true that no accurate assessment was supplied in the evidence as to what plaintiff's damages might be. There was testimony, however, dealing with the cost of water softeners, the profit therein, and the fact that at least some people had purchased alleged Lindsay water softeners. This is sufficient evidence to show this Court that damage has been done to the plaintiff. In the words of 15 U.S.C. § 1117 "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." It is our opinion that we have the discretion to set the damages in an amount that will give the plaintiff proper redress. This is especially true where it is difficult to compute the exact value of the damages. Much of the damage in this instance is to the plaintiff's reputation which is necessarily intangible.

■ With respect to the injunctive relief, defendant contends that since it no longer uses the name Lindsay no injunction should issue. It is true that de-

fendant for some time used the term "formerly Lindsay" on its store and that it has completely changed its name now. However, defendant has not formally conceded that it has no right to the use of the name Lindsay and we are wholly justified in entering an order injunctively preventing the defendant from using the name hereafter. And this is true although there is no present violation of the plaintiff's rights by the defendant. Schreiber Mills v. O. A. Cooper Co. [D. Neb.1949] 87 F.Supp. 674.

Defendant also contends that as long as the label [Water King] attached to the products it was selling shows the true source of manufacture, there can be no injunctive relief allowed. This may be accurate in many instances, but where it occurs that the consumer is led to believe and does believe that the product delivered is but a model in a series manufactured by the plaintiff, the reasoning of such an approach fails. Testimony in this case indicated that the consumers felt Water King was a model of Lindsay, just as Impala is a model of Chevrolet, etc. If that is the result of the labeling, we cannot say that the true source of manufacture is clearly exposed to the consumer. The public need not be so careful as to minutely examine all products purchased. We find no reason that this theory should prevent us from granting injunctive relief.

Defendant raises the question in its brief of the cancellation of plaintiff's trademark registration. As we mentioned above, we have found no abandonment by the plaintiff of the trademark and tradename of Lindsay. However, this particular issue was separated by the Court from the trial of the present issues and must be heard at a separate date. In view of the foregoing, it is difficult to imagine that Soft Water could be successful in any such further venture.

█ We have therefore determined that the plaintiff shall be granted injunctive relief from any further use by the defendant of the trademark or tradename Lindsay. Furthermore, the defendant Northwestern Bell Telephone Company shall be enjoined from accepting any advertising for its yellow page directory from the defendant Soft Water which makes any reference to the trademark or tradename Lindsay.

In view of the paucity of the evidence on the question of damages, we would not be justified in awarding the entire sum of $36,924.55 to the plaintiff. We have determined, however, that Union should have and receive from the defendant Soft Water the sum of $7500.00.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52[a] of the Federal Rules of Civil Procedure. Counsel for the plaintiff will prepare and submit an appropriate order of judgment within fifteen [15] days.