HEATON DISTRIBUTING CO., Inc., Appellant,

v.

UNION TANK CAR COMPANY, a Corporation, Appellee.

No. 18620.

United States Court of Appeals Eighth Circuit.

Dec. 27, 1967.

Truman Clare, Omaha, Neb., for appellant. George Nimmer, Omaha, Neb., was with Truman Clare, Omaha, Neb., on the brief.

Dean A. Olds, Chicago, Ill., for appellee; Robert M. Spire, Omaha, Neb., was with Dean A. Olds, Omaha, Neb., on the brief.

Before MEHAFFY and GIBSON, Circuit Judges, and STEPHENSON, District Judge.

MEHAFFY, Circuit Judge.

This is an appeal from a judgment awarding $7,500.00 damages and granting injunctive relief to appellee, Union Tank Car Company, a manufacturer of soft water equipment under the registered trademark and trade name of Lindsay, in an action tried to the court against appellant, Heaton Distributing Co., a former franchised Lindsay dealer, for breach of contract, unfair competition, and violation of certain provisions of the Lanham Trade-Mark Act (15 U.S.C. §§ 1051–1127).

The court found that Union's allegations were sustained by the evidence and permanently enjoined Heaton from all use of the name Lindsay, alone or in combination with other words, as part of a trademark or trade name or otherwise; false advertising that it is an authorized sales or service dealer of the Lindsay Division of Union; and palming off or substituting non-Lindsay products. Northwestern Bell Telephone Company, a co-defendant with Heaton, was permanently enjoined from accepting or publishing any telephone or yellow page listings from appellant which include the name Lindsay, but Northwestern Bell has not appealed.

At the time of the institution of the action by Union, Heaton was doing business as Lindsay Soft Water Corporation

of Omaha, Inc., and the opinion of the Nebraska District Court appears as Union Tank Car Company v. Lindsay Soft Water Corporation of Omaha, Inc. and Northwestern Bell Telephone Company, 257 F.Supp. 510 (D.Neb.1966). We affirm the District Court's decision.

Heaton challenges the sufficiency of the evidence to support the court's finding that a valid and binding agreement existed between the parties, or, if one existed, that it was breached; that appellant was guilty of palming off spurious merchandise as Lindsay products; or that appellee is entitled to damages or injunctive relief. Appellant further contends that appellee had abandoned the trademark or trade name Lindsay, which was grounds for cancellation of the trademark registrations, and that the court erred in holding that there was no abandonment.

Union Tank Car Company is a New Jersey corporation with its principal place of business in Chicago, Illinois, and is duly qualified to do business in the State of Nebraska. Heaton Distributing Co. and Northwestern Bell are both Nebraska corporations with their principal places of business in Omaha, Nebraska. Diversity of citizenship and the requisite amount in controversy establish jurisdiction.

In 1949 or 1950, Union's predecessor, The Lindsay Company, entered into a franchise agreement with Ralph A. Heaton for the operation of a Lindsay dealership for the sale of Lindsay products in a certain prescribed territory surrounding Omaha, Nebraska. The business was first operated as a proprietorship under the name of Lindsay Soft Water Co., but was later incorporated under the name of Lindsay Soft Water Corporation of Omaha, Inc., Ralph A. Heaton being the sole stock owner and president of the corporation. In 1956, Union Tank Car Co. purchased the Lindsay trademark and trade name registrations from The Lindsay Company and Ralph A. Heaton continued to operate his business as a franchised dealership of Lindsay products by agreement with Union.

The last franchise agreement entered into between the parties was dated January 18, 1963. Both parties considered themselves to be bound thereby and operated in accordance therewith until February 24, 1964, when Union notified appellant that the agreement was being cancelled because of the failure of appellant to purchase the required quota of fifty water softeners per month as provided therein. The exercise of this option by Union was not questioned nor objected to by appellant; however, appellant continued to use the word Lindsay in its corporate name, on its trucks, in its advertising, etc., as well as the Lindsay mark or emblem, the upside-down umbrella, in violation of the terms of the agreement which provided that in the event of termination for any cause the dealer agreed "immediately to cease to use all of Lindsay's trade names, trade marks, labels and patent rights, in addition to removing at the Dealer's expense all Lindsay signs from the Dealer's place of business, discontinuing the use of the name 'Lindsay' in the name of his business and discontinuing all Lindsay advertising. * * *" It was specifically provided, however, that the dealer could continue the rental and sale of the Lindsay water conditioners theretofore purchased. The evidence shows that demands were made by Union that appellant comply with this provision, although Ralph Heaton denies that he was ever personally contacted in this regard. Shortly after the cancellation of the agreement, Union began receiving information and complaints from customers that appellant was "palming off" Water King water softener units, a product of Borgerud Manufacturing Co., as Lindsay units, and that it was misleading the public into believing that it was still an authorized Lindsay dealer. An investigation of these complaints resulted in the institution of this suit on November 17, 1964.

Chief Judge Robinson found that a valid and binding agreement existed between the parties, that the evidence clearly established that the quota requirements under the agreement were not met, which

entitled Union to cancel the agreement, that there had been no abandonment of the trademark or trade name by Union, and that spurious merchandise was purposely palmed off as Lindsay products by several of appellant's sales representatives, who represented themselves as authorized Lindsay personnel.

Appellant contended at the time of trial and now contends on this appeal that the franchise agreement was not a valid and enforceable contract, and, indeed, there were many defects in the instrument. In the first place, it was prepared by Union on an old form used by The Lindsay Company, although there was a designation at the top, "Division—Union Tank Car Company." The names of the parties were copied from a prior agreement which incorrectly referred to the manufacturer as "The Lindsay Company, a Minnesota corporation," and to the dealer as "Ralph A. Heaton, a Proprietorship Corporation — Partnership — Proprietorship — doing business under the name of Lindsay Soft Water Co." The agreement was signed by R. A. Heaton but was never signed by anyone representing Union or its Lindsay Division, although it specifically provided that "this agreement shall not be effective until signed by an authorized executive of Lindsay." According to a secretary, she inadvertently filed it away before presenting it to the proper Union official for his signature, Mr. Heaton having signed in the space provided for the officer of the manufacturer. Also, it bore the erroneous notation, "Superseded by New Agreement 10/25/63," since the new agreement, although prepared, was never entered into by the parties. This notation was also a clerical mistake by a secretary.

Concerning the validity of the agreement, Judge Robinson said (257 F.Supp. 515):

"We find, however, that despite the defects found in this written agreement, the parties did have a valid and binding contract. Both parties were aware of the identity of the party with whom they were dealing. This is obvious from the many years of associa-

tion—about 13 years—prior to the entering of the agreement on January 18, 1963. And after that date, both parties acted under the contract and accepted the provisions thereof. We must therefore find that even if the contract was invalid at its inception, the parties subsequently ratified and accepted the written instrument as their agreement and were both bound by it. This was clearly the intention of the parties and we do not believe that Soft Water [Heaton] should now be allowed to claim that a clerical mistake [the evidence tended to show that the contract was improperly filed by a secretary before having been signed] and sloppy draftsmanship void an agreement under which both parties acted and considered themselves to be bound.

"In any case, the provision was for the benefit of Union to protect it against acceptance of a dealership agreement without the knowledge of an executive. We find that this provision has been waived and under the circumstances cannot be considered to be a condition precedent to the validity of the contract. It is elementary law that only the party to be charged need to have signed the contract in the absence of some agreement to the contrary. Restatement of Contracts, § 211. We are convinced that the parties here had a meeting of the minds, that both intended that a contract be entered, and that a binding contract between the parties did, in fact, exist."

Appellant argues that inasmuch as the agreement was for more than a year it had to be signed by an executive of Union, or else it was not enforceable under the statute of frauds. Under the terms of the agreement it was to be subject to the laws of Minnesota and was to be performed in Nebraska and Minnesota. Under both the Minnesota Statute of Frauds (M.S.A. § 513.01) and the Nebraska Statute of Frauds (R.R.S.1943 § 36–202), such an agreement or some note or memorandum thereof in writing must be "subscribed by the party charged therewith."

It is noted that the statute requires only that the agreement be signed by the party charged. Restatement, Contracts § 211 (1932), cited by the District Court provides:

"When a memorandum of an oral contract within the Statute [of Frauds] is signed by only one party to the contract and the Statute is not otherwise satisfied, the contract is enforceable against the party who has signed the memorandum but not against the other party."

■■ We are aware of authority for the view that mutuality of obligation is essential to the validity of an executory bilateral contract which is based solely on mutual promises or covenants and that unless both parties are legally bound so that each may hold the other liable for its breach, the contract lacks mutuality and neither party is bound. See 17 C.J.S. Contracts § 100(1) (1963) and cases there cited. However, it has been held that want of mutuality simply means want of consideration and that performance of a contract, either partial or in full, supplies a sufficient consideration to support all of its provisions. Welsh v. Barnes-Duluth Shipbuilding Co., 221 Minn. 37, 21 N.W.2d 43 (1945). At any rate, under the circumstances here, we are compelled to hold that it was a binding and enforceable contract. Heaton was at the time sole owner of the Heaton corporation and admittedly was empowered to act for it. He not only signed the contract but both parties acted upon it over a long period of time as a binding contract. Additionally, both parties were aware of the party with whom they were dealing, and the contract should not be voided by a clerical mistake.

■ We find no merit in Heaton's argument that if the contract were valid, Union reaffirmed it after cancellation by continuing to mail advertising material to Heaton. We concur with the trial court's view that this was not a reaffirmance but merely indicated that because of an oversight or lack of communication between Union's departments Heaton's name was not removed from its mailing list.

Heaton contends that the franchise agreement is void as against public policy in that it provides that the dealer may not contest the validity of "any patent right, trade name, trade mark or label at any time used or claimed by Lindsay. * * "

■ The agreement also provides that if any part thereof is held to be invalid or unenforceable, such provision shall be deemed separable and the remaining provisions shall continue to be valid and binding. Unless there is a compelling legal reason, courts should uphold contracts rather than strike them down upon grounds of public policy and thereby enable a party to escape his obligations thereunder.

■ Even in the absence of any proviso in the contract not to contest the validity of the trademark or trade name, we think that the dealer, in recognizing the manufacturer as the owner of the trademark or trade name under the terms of the agreement, would be estopped to claim otherwise. Cf. Pacific Supply Coop. v. Farmers Union Central Exch., Inc., 318 F.2d 894 (9th Cir. 1963); Smith v. Dental Products Co., 140 F.2d 140 (7th Cir. 1944), cert. denied, 322 U.S. 743, 64 S.Ct. 1146, 88 L.Ed. 1576 (1944); E. F. Prichard Co. v. Consumers Brewing Co., 136 F.2d 512 (6th Cir. 1943), cert. denied, 321 U.S. 763, 64 S.Ct. 486, 88 L.Ed. 1060 (1944).

■ Actually, however, it is immaterial to the outcome of this case whether the franchise agreement between the parties is enforceable or not, since in either event, due to the actions of the appellant, the appellee is entitled under the applicable law to injunctive relief and damages. Under the terms of the agreement, appellee had a right to cancel it in the event of appellant's failure to purchase the required quota of water softener units, which the evidence showed it failed to do, and appellant was obligated thereunder to cease the use of the trademark and trade name of Lindsay upon such cancellation. If the purported agreement of January 18, 1963 were not a valid and enforceable agreement, then appellant was

certainly unauthorized to use the Lindsay trademark and trade name in connection with its business.[1]

The District Court found appellant guilty of unfair competition, both at common law and under the provisions of 15 U.S.C. § 1125(a), and also guilty of the violation of the federal trademark statute, 15 U.S.C. § 1114. Generally speaking, the same set of facts in support of a suit for infringement of a trademark is looked for as in one for unfair competition. G. Leblanc Corp. v. H. & A. Selmer, Inc., 310 F.2d 449, 460 (7th Cir. 1962), cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963). Trademark infringement is but a part of the broader law of unfair competition, and facts supporting a suit for infringement and one for unfair competition are substantially identical. The Villager, Inc. v. Dial Shoe Co., 256 F.Supp. 694, 702, 703 (E.D.Pa. 1966); Armco Steel Corp. v. International Armament Corp., 249 F.Supp. 954, 959 (D.D.C.1966).

After the written notification by Union on February 24, 1964 that the franchise agreement was being cancelled, Heaton continued to operate under the name Lindsay Soft Water Corporation of Omaha, Inc. until approximately two weeks after this suit was filed when it placed the word "Formerly" before the name of the company. It continued to answer the telephone by saying "Lindsay" or "The Lindsay Company," and did not remove the trade name or trademark of Lindsay from its trucks. The testimony of various customers showed that they received the sales representatives of appellant into their homes because they identified themselves as being from Lindsay and the customers had planned, if they ever bought a water softener unit, to buy a Lindsay. In other words, they capitalized on the reputation and good will of Lindsay to gain entrance to the premises, often showed the customers Lindsay brochures, sold them what they thought was a Lindsay unit, wrote the order up on a Lindsay order blank, and then delivered a Water King unit. So thoroughly convinced were the customers that they were getting a Lindsay unit that even if they saw the name Water King on the unit they

---

1. 15 U.S.C. § 1114 provides:

"(1) Any person who shall, without the consent of the registrant—

"(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

"(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

"shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive."

In 15 U.S.C. § 1125(a), it is further provided:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

thought it was one of Lindsay's models, and, in fact, this was the impression that the sales representative gave in instances where the subject came up.

■■■ In Coca-Cola Co. v. Foods, Inc., 220 F.Supp. 101 (D.S.D.1963), it was held that the defendant's substitution of a different product in response to requests for plaintiff's trademarked beverage, without notice to purchasers that the product served was not in fact that of plaintiff, constituted "palming off" or "passing off" and trademark infringment under 15 U.S.C. § 1114. A man may not palm off or sell his own goods under the pretense that they are the goods of another. Also, he may not mislead the public into believing that he is an authorized dealer of a reputable concern, and he invades the concern's good will if he does so. Volkswagenwerk v. Frank, 198 F.Supp. 916 (D. Colo.1961). Neither may he utilize a concern's trademark or trade name in his advertising unless authorized to do so. Admiral Corp. v. Price Vacuum Stores, 141 F.Supp. 796 (E.D.Pa.1956). See also Baker v. Simmons Co., 325 F.2d 580 (1st Cir. 1963).

■■ Judge Robinson stated that he was satisfied from the testimony of the consumers that spurious merchandise was purposely palmed off as Lindsay products, and that to use the name Lindsay to assist in the sale of another product and to deceive potential consumers into believing that it was a Lindsay product was obviously unfair competition. The evidence clearly supports the court's finding that Heaton was guilty of trademark infringement and unfair competition.

Heaton contends that Union is guilty of uncontrolled licensing and has abandoned the Lindsay trademark within the meaning of Section 45 of the Lanham Act, 15 U.S.C. § 1127, which provides as follows:

"A mark shall be deemed to be 'abandoned'—

"(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment.

"(b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin."

The record does not reflect any evidence of discontinuance of use or intent to abandon the trademark. See in this connection E. I. Du Pont De Nemours & Co. v. Celanese Corp. of America, 167 F. 2d 484, 489, 35 CCPA 1061, 3 A.L.R.2d 1213 (1948). The value of the Lindsay trademark and trade name is reflected in the testimony of Emmett H. Mann, Executive Vice-President of Union, who stated that for three or four years prior to the suit their volume of business on Lindsay products had ranged between five and five and a half million dollars and that they estimated the current year's business at approximately eight million dollars. Their nationwide advertising expenditures for the preceding three years had ranged between four hundred thousand and six hundred thousand dollars. It is obvious that they were expanding the business and not abandoning the use of the trademark.

Neither is there any indication in the record that the Lindsay trademark had lost its significance of the origin of the product. Almost without exception, the customers who testified stated that they recognized the Lindsay name, agreed to talk with the sales person because he or she represented Lindsay, and that they preferred a Lindsay unit because it was a well-known and reputable product. Heaton attempted to show that this was so solely because of its company, which at that time went under the name of Lindsay Soft Water Company of Omaha, Inc., but we cannot agree. Appellant never advertised itself as anything but a dealer, and there is no reason to suppose that any of its customers ever regarded it as anything other than a retail outlet for the trademarked Lindsay products.

Appellant describes Union's alleged failure to properly police its dealers as

"uncontrolled licensing," introducing the testimony of several former franchised dealers who stated that they continued to use the Lindsay name or trademark in their telephone or billboard advertising and/or in their company name for a short time after the cancellation of their franchise agreements. There was no proof that this was with the knowledge and consent of Union except where the business was in the process of being sold to another dealer. Also, it was contended that in certain instances persons without a franchise were permitted to sell Lindsay units but this was shown to be in instances where Union was trying to interest them in becoming franchised dealers.

 The generally accepted meaning of "uncontrolled licensing" is where a trademark owner has licensed someone else to make or manufacture its products and then fails to control the quality of the products made by the licensee, thus permitting a deception of the public. See Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 367 (2nd Cir. 1959). Union did not license Heaton to manufacture products and affix the Lindsay name, but merely authorized it to retail Lindsay products. The mere fact that in a few instances former franchised dealers did not cease the use of the Lindsay trademark or trade name immediately upon the cancellation of their agreement is no excuse for appellant to commit a similar wrong. Standard Oil Co. v. Standard Oil Co., 252 F.2d 65, 78, 76 A.L.R.2d 600 (10th Cir. 1958).

 The evidence does not support appellant's claim of trademark abandonment.

Appellant contends that the District Court erred in finding that Union was entitled to damages in the amount of $7,500.00, asserting that Union did not offer one iota of evidence relating to damages or prove the total sales made during the period of time involved. The section under which the court awarded damages, 15 U.S.C. § 1117, provides:

"When a violation of any right of the registrant of a mark registered in the Patent Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty."

It is true that there was no effort to prove the total sales or to arrive at an accounting of the profits, although numerous witnesses testified that Heaton had substituted and delivered Water King water softener units when they thought they had purchased and were receiving Lindsay units. Union, however, sought damages to its good will and reputation caused by appellant's misrepresentations which destroyed the confidence of the customers, who thought they were dealing with a factory authorized dealer. They were disgusted at the untrustworthiness of those whom they considered to be Lindsay personnel, and most of them were extremely dissatisfied with the product which had been palmed off on them. The trial court based its award of damages on the fact that the evidence showed that Union had obviously been damaged and much of the damage was to its reputation.

With regard to damages recoverable, Judge Riddick, speaking for this court in Obear-Nester Glass Co. v. United Drug Co., 149 F.2d 671, 674 (8th Cir. 1945), cert. denied, 326 U.S. 761, 66 S.Ct. 141, 90 L.Ed. 458 (1945), had this to say:

"Damages recoverable may include all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts, such as profits on lost sales, loss from reduction in the price of goods due to the infringing competition, *damage to the reputation of the trademark owner's goods or business*, and expenses incurred in preventing purchasers from being deceived by the infringer's wrongful conduct." (Emphasis added.)

See also and compare Century Distilling Co. v. Continental Distilling Corp., 205 F.2d 140 (3rd Cir. 1953), cert. denied, 346 U.S. 900, 74 S.Ct. 226, 98 L.Ed. 400 (1953), and Admiral Corp. v. Price Vacuum Stores, supra.

We think the record amply supports the finding of the trial court that there was substantial damage to appellee's reputation and good will caused by the deception of Heaton's sales representatives, and under § 1117 it was authorized "in its discretion [to] enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." In our view, the court did not abuse its discretion in its award of $7,500.00 damages.[2]

Heaton asserts that Union was not entitled to injunctive relief inasmuch as Heaton had already discontinued the use of the Lindsay trademark and trade name. Heaton was permanently enjoined from all use of the name Lindsay, alone or in combination with other words, as part of a trademark or trade name or otherwise; false advertising that it is an authorized sales or service dealer of the Lindsay Division of Union; and

palming off or substituting non-Lindsay products. See 15 U.S.C. § 1116 for authority to allow injunctive relief for violation of the federal trademark laws.

 The courts have many times held that where a party's intentions are in doubt, as is the case here, the entry of a permanent injunction is appropriate. See Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2nd Cir. 1961), and cases cited therein. We, therefore, hold that Union is entitled to the injunction.

The judgment of the District Court is affirmed.

2. In the recent case of Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), the Supreme Court held that attorney's fees were not recoverable under the Lanham Act, but no award was made for attorney's fees in the instant case and we do not construe that opinion as affecting an award for damages within the context of this case.