**MORTON BUILDINGS OF NEBRAS-KA, INC., a Nebraska Corporation, Plaintiff,**

v.

**MORTON BUILDINGS, INC., an Illinois Corporation, et al., Defendants.**

**No. CV71–L–245.**

United States District Court, D. Nebraska.

Oct. 15, 1971.

John McArthur, A. James McArthur and Wallace Rudolph, Lincoln, Neb., for plaintiff.

Fredric H. Kauffman, Lincoln, Neb., for defendants.

### MEMORANDUM

URBOM, District Judge.

Presently before the court are these motions: (1) filing No. 6, to dismiss Count II as to the defendant Morton Buildings, Inc., for failure to state a claim upon which relief can be granted; (2) filing No. 7, to dismiss as to the defendant Henry Getz; (3) filing No. 8, to dismiss as to the defendant William Uphoff; (4) filing No. 9, to dismiss as to the defendant Kenneth Weaver; (5) filing No. 10, to dismiss as to the defendant Arnold Reiff; (6) filing No. 12, for a preliminary injunction on behalf of the defendant and counterclaimant Morton Buildings, Inc.; and (7) filing No. 13, for a preliminary injunction on behalf of the plaintiff.

On June 14, 1971, the plaintiff filed a complaint under Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, and Section 4 of the Clayton Act, 15 U.S.C. § 15.

The defendant Morton Buildings, Inc., an Illinois corporation, manufactures and distributes a specialized type of wood-framed and metal-covered building. It distributed such buildings to a state representative, which sold and erected the buildings under the name of Morton buildings.

Prior to 1965 Morton Buildings, Inc., operated from its present location in Morton, Illinois, as the Interlocking Fence Company. On October 28, 1965, the corporate name of Interlocking Fence Company was changed to Morton Buildings, Inc. From 1949 Interlocking Fence Company and its successor, Morton Buildings, Inc., sold Morton build-

ings in a multi-state area. Beginning in 1968 Morton Buildings, Inc., established an independent dealership in Lincoln, Nebraska, and authorized Earl West to distribute and erect Morton buildings within the State of Nebraska. Mr. West began operation in August, 1968, as a sole proprietorship under the name of Morton Buildings of Nebraska, which was incorporated as Morton Buildings of Nebraska, Inc. in April, 1970. Furthermore, the plaintiff registered as a trade name with the Secretary of State of Nebraska the name, Morton Buildings of Nebraska, Inc.

On April 28, 1971, the dealership of the plaintiff was terminated by the defendant Morton Buildings, Inc. Sometime in July, 1971, Earl West became a dealer for Kamar Buildings, a competitor of Morton Buildings, Inc. After becoming a Kamar distributor, West incorporated a separate company under the name of Kamar Buildings of Nebraska, Inc., and is carrying on essentially the same business he did through Morton Buildings of Nebraska, Inc. West stated that it was intended that Kamar Buildings of Nebraska, Inc., operate in the future with the notation in its advertising that it was formerly Morton Buildings of Nebraska, Inc. There is no evidence that the plaintiff has represented itself as a dealer for Morton products since April 28, 1971, or that it will do so in the future. Before this court West testified that all Morton signs had been removed from his truck and building, leaving only a sign at the highway leading to his place of business, from which he intends to remove the Morton logo.

In Count I of the complaint the plaintiff alleges 15 separate acts which it contends establish that the defendant corporation sought to deprive the plaintiff of its business and destroy it as a possible future competitor. The alleged acts include interference with the plaintiff's relationship with the plaintiff's salesmen, hiring by the defendant of the plaintiff's salesmen, inducing the plaintiff's customers to destroy their contracts with the plaintiff and enter into new contracts with the defendant, and encouraging false and groundless claims to be filed with the Nebraska State Labor Commissioner by the plaintiff's former salesman. Count II contains additional practices which the plaintiff claims are predatory and terminates with a prayer for treble damages under the Clayton Act.

Evidence was adduced on August 17, 1971. Briefs by both parties have been furnished to the court.

## I. MOTION TO DISMISS COUNT II FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

■■ It is urged by the defendant Morton Buildings, Inc. that 15 U.S.C. § 15, which authorizes private enforcement of Sections 1 and 2 of the Sherman Anti-Trust Act, is inapplicable because the plaintiff merely alleges an unlawful distributorship termination, citing Ace Beer Distributorship, Inc. v. Kohn, Inc., 318 F.2d 283 (C.A.6th Cir. 1963); Scanlon v. Anheuser-Busch, Inc., 388 F.2d 918 (C.A.9th Cir. 1968); and Mackey v. Sears, Roebuck & Co., 237 F.2d 869 (C.A. 7th Cir. 1956). According to the defendant, Count II of the complaint is insufficient to state a claim under the antitrust laws because it does not allege that the defendant is attempting to monopolize the market of wood-framed, metal-covered buildings. In the alternative, the defendant states that Count II is insufficient to state a claim upon which relief can be granted under any other theory of jurisdiction.

The plaintiff's basis for predicating jurisdiction upon the antitrust law is a combination of economic theory and a line of antitrust case law which ostensibly adopts the economic theory to fashion antitrust relief. Essentially, the plaintiff's argument is that the antitrust law provides a remedy for unfair business practices which eliminate an important level of economic performance or consolidate economic power which was decentralized, thereby reducing competition. The plaintiff relies upon Atlantic Heel

Co. v. Allied Heel Co., 284 F.2d 879 (C.A. 1st Cir. 1960); and interprets Metal Lubricants Co. v. Engineered Lubricants Co., 411 F.2d 426 (C.A.8th Cir. 1969) as implicitly embracing the *Atlantic Heel* decision. Also see Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kan., 353 F.2d 618 (C.A.10th Cir. 1965); Arthur Murray, Inc. v. Reserve Plan, 406 F.2d 1138 (C.A.8th Cir. 1969); Vogue Instrument Corp. v. Lem Instruments Corp., 40 F.R.D. 497 (U.S.D.C.S.D.N.Y. 1966). As applied to the present case, the plaintiff urges that the plaintiff and the defendant were both in the building industry but each operated at a different level of economic performance, in that the plaintiff purchased component parts which it erected into Morton buildings, whereas the defendant supplied the components and conducted national advertising.

Underlying Judge Lay's opinion in *Metal Lubricants Co.*, supra, is the basic acceptance of the *Atlantic Heel Co.* and *Perryton* cases as establishing a precedent for violations of Section 1 of the Sherman Act where a conspiracy exists to eliminate a competitor unfairly.

The applicable test to ascertain the legal sufficiency of the complaint is ably expressed by Professor Moore in 2A Moore's Federal Practice, 12.08:

> " * * * A complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" (Emphasis in original text.)

That is, a complaint will not be dismissed if any allegation therein may entitle the plaintiff to relief upon a proper showing of underlying facts. Therefore, an acceptance as true for purposes of this motion the assertions that the defendants committed the several acts alleged in Count II in furtherance of a plan to eliminate the plaintiff as a competitor and to monopolize the sale and erection of Morton buildings in the Nebraska territory requires a denial of the motion to dismiss and an allowance of the plain-tiff's placing of his evidence before the trier of fact.

## II. MOTIONS OF INDIVIDUAL DEFENDANTS TO DISMISS.

Each of the motions to dismiss filed on behalf of the individual defendants, Henry Getz, William Uphoff, and Kenneth Weaver, is grounded upon these issues: (1) whether such defendant was subject to extraterritorial service of process under the Nebraska long-arm statute, § 25–536, R.R.S.Neb.1943 (1969 Supp.); (2) whether venue properly is here; (3) whether service of process was proper; (4) whether a claim upon which relief may be granted has been stated.

At the August 16, 1971, hearing on these motions primary emphasis was placed on the assertions of lack of *in personam* jurisdiction and improper venue. As the complaint does not purport to state a claim against any individual defendant under Count I, the motions properly can be considered only as to Count II.

### A. Service under Long-Arm Statute.

That the individual defendants are nonresidents of Nebraska has been stipulated to as factual. The harm arising from unfair competition is tortious in nature. Frank H. Gibson, Inc. v. Omaha Coffee Co., 179 Neb. 169, 137 N.W.2d 701 (1965); Simpson v. Union Oil Co. of California, 311 F.2d 764, 768 (C.A. 9th Cir. 1963), reversed on other grounds, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); Norman Tobacco Candy Co. v. Gillette Safety Razor Co., 197 F.Supp. 333 (U.S.D.C.Ala.1960), aff'd 295 F.2d 362 (C.A.5th Cir. 1961).

A basis for securing *in personam* jurisdiction through extraterritorial service of process is provided by § 25–536 (1) (c) R.R.S.Neb.1943 (1969 Supp.). It states that such service may be had on a nonresident if he caused "tortious injury by an act or omission in this state." Recently, in Joedeman v. Gamble-Skogmo, Inc., Civ. 1747 L (unreported memorandum U.S.D.C.Neb. August 4, 1971), I interpreted from Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656 (1971) that

the Nebraska long-arm statute is measured for breadth by constitutional standards of due process only. The Supreme Court of Nebraska more recently in Von Seggern v. Saikin, 187 Neb. 315, 189 N.W.2d 512 (1971) has verified that interpretation, putting it in terms of "fundamental fairness" and citing International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1948).

As Judge Smith in Von Seggern v. Saikin, supra, noted: "No one has constructed a table of 'minimum contacts' that will always satisfy requirements of due process." Consequently, judicial inquiry, while necessarily imprecise, endeavors to ascertain the constitutional fairness of jurisdiction in a specific case. The federal court cannot insouciantly declare jurisdiction to be obtained, but through the careful analysis practiced in Aftanase v. Economy Baler Co., 343 F.2d 187 (C.A.8th Cir. 1965), must determine the presence or absence of certain paramount factors which give flesh to the due process clause of the United States Constitution.

I am persuaded that a violation of antitrust acts falls within the scope of Nebraska's long-arm statute and that the five factors mentioned by Judge Blackmun (now Justice Blackmun) in *Aftanase* are present in this case:

(1) QUANTITY: After Morton Buildings, Inc., entered into the distributorship agreement with Earl West, the contacts between the State of Nebraska and the Illinois corporation were numerous, continuous and systematic. The corporation, while a legal entity, must by necessity operate through its officers. These defendants were officers of the Illinois corporation: Henry Getz, president; William Uphoff, general manager; and Kenneth Weaver, treasurer. The alleged acts complained of by the plaintiff in Count II were allegedly committed by these defendants in their capacities as officers or agents of the corporation. These allegations sufficiently demonstrate that the individual defendants' nexus with the State of Nebraska was more than passing or casual.

(2) QUALITY: Presumably, the State of Nebraska has a strongly vested interest in preventing by a nonresident business' officers the inflicting of harm to the state's economy by acts calculated or resulting in the destruction of competition. The complaint avers that these acts were directed at destroying a business with retail sales approaching $1,000,000.-00 yearly. Moreover, it cannot be gainsaid that a nonresident corporation and its officers should be subject to the processes of the state's laws where they derive substantial pecuniary benefit for their voluntary and affirmative economic activity in the state.

(3) SOURCE OF CAUSE OF ACTION: As was the case in *Joedeman*, the present cause of action did not arise out of a single contact with the State of Nebraska, but instead consisted allegedly of a series of interrelated acts which in combination allegedly indicate unfair competition to destroy a competitor. In addition, the connection between the alleged antitrust violations, tortious in nature, and the business relationship with Morton Buildings of Nebraska, Inc. is direct.

(4) INTEREST OF THE STATE OF NEBRASKA IN THE ACTION: In this case the quality of the contact with the state is inextricably linked with the interest of the state as evidenced by my earlier statements under section (2). Judge Blackmun noted in *Aftanase* that a state has a concrete and definite interest in providing its citizens with a forum to redress wrongs committed by nonresidents who maintain contacts with the state. The state interest may be more compelling since the ramifications flowing from the direct injury to the plaintiff's business reach a large number of consumers and potential consumers who suffer from lessened competition. In contrast, as in *Aftanase* and *Joedeman*, the tortious injury suffered by the individual plaintiff does not have the profound, direct and detrimental effect on the economic well-being of the people.

(5) CONVENIENCE FACTORS: I cannot say with any sense of exactitude

that the convenience of forum balances in one party's favor. Therefore, it should be discounted.

I hold that sufficient minimum contacts between these defendants and the State of Nebraska exist to permit the state, consonant with the due process clause, to exercise *in personam* jurisdiction.

### B. Venue under Federal Antitrust Law.

The resolution of whether proper venue has been laid in this court necessitates examination of two statutory venue provisions. The general venue statute, 28 U.S.C. § 1391(b), as amended, provides:

> "A civil action wherein the jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or *in which the claim arose*, except as otherwise provided by law." (Emphasis added.)

The applicable special venue statute, 15 U.S.C. § 15, provides:

> "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, * * * "

The palpable confrontation between these two venue statutes was resolved in Albert Levine Associates v. Bertoni & Cotti, 314 F.Supp. 169 (U.S.D.C.S.D.N.Y. 1970), against the defendants. Judge Metzner held:

> " * * * In the *Housing Auth.* case [Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 293 F.Supp. 252 (U.S.D.C.Pa. 1968)] the court said:
>
> > ' "As otherwise provided by law" simply means that even if venue would not be proper under § 1391 (b), it will still be found to exist if proper under a special venue statute.'

"This seems a proper interpretation in view of the generally accepted thesis in this district that the specific venue provisions of the antitrust statutes were intended to facilitate the prosecution of these actions and not to make unavailable the general venue provisions. * * * * "

This interpretation is consistent with the general liberalization of the venue requirement, apparent from the congressional decision to amend § 1391(b) by adding the proviso "in which the claim arose" in 1966. The allegations of the complaint leave little room to find that the alleged acts resulting in unfair competition and monopolization occurred in any other state than Nebraska, and therefore venue is proper under § 1391(b) and is not obviated by 15 U.S.C. § 15.

### C. Service of Process.

Rule 4(e) of the Federal Rules of Civil Procedure directs that the sufficiency of service be measured by state law. The applicable statute governing out-of-state service of process, § 25–540 (1) (c), R.R.S.Neb.1943 (1969 Supp.), provides:

> "When the law of this state authorizes service outside of this state, the service, when reasonably calculated to give actual notice, may be made:
>
> > *    *    *    *    *    *
>
> (c) By any form of mail addressed to the person to be served and requiring a signed receipt."

The plaintiff placed in evidence Exhibit 12, a document captioned "Affidavit of Service" and three return receipts signed by each of the defendants. The affidavit states that service was made personally upon the defendant Arnold Reiff, individually and as District Manager of Morton Buildings, Inc., and by certified mail, return receipt requested, upon Getz, Uphoff, and Weaver, at their office address in Morton, Illinois. The return receipts show that a copy of the summons and a copy of the complaint were served on each of these defendants. I conclude that process was sufficient

and in conformity with the state statute regulating the methods of extraterritorial service.

    D.   Failure to state a claim upon which relief can be granted.

In Part I of this opinion this court has already resolved the issue of the sufficiency of the allegations of Count II. That resolution is applicable here.

### III. MOTION TO DISMISS DEFENDANT REIFF

Arnold Reiff was sales manager of Morton Buildings, Inc. for the territory west of the Mississippi River and now is sales manager of the company office which was established in Lincoln, Nebraska, on or about May 1, 1971. According to the complaint, Reiff along with the other defendants participated in a plan to eliminate the plaintiff as a competitor and to monopolize the sale and erection of Morton buildings in Nebraska by means of various predatory acts. The motion prays that the complaint be dismissed for failure to state a claim upon which relief can be granted, and in the alternative seeks the dismissal of Count II for Rule 12(b) (6) reasons and for improper venue. What already has been said is dispositive of the issues raised and, accordingly, Reiff's separate motion to dismiss must also be denied.

### IV. APPLICATIONS FOR PRE-LIMINARY INJUNCTION

■  Each corporation seeks a judicial order restraining the other from the continued use as a business appellation of the name Morton buildings in such activities as promotions, advertisements, and solicitations.

The defendant's motion for injunctive relief was filed on July 30, 1971, and is based upon facts which existed during the three-month hiatus from termination of the dealership contract to the date of filing. In the motion the defendant avers that Morton Buildings of Nebraska, Inc. was without company authorization to use the Morton building name subsequent to the dealership termination on April 28, 1971, but nevertheless, the Nebraska corporation has continued to use the designation of Morton buildings in its newspaper advertisements, telephone directory advertisements, telephone solicitations and at its place of business, even though it had become a distributor for Kamar Buildings, a rival manufacturer of buildings.

A two-pronged approach is offered by the plaintiff in its counter-motion: (1) the extensive promotional efforts exerted by the plaintiff and its predecessor under the name Morton buildings have resulted in the acquisition of substantial good will; and (2) the existence of an unspecified number of outstanding five-year warranties on the Morton buildings sold and erected by the plaintiff during its tenure as a Morton distributor requires continued identification with the Morton name.

From the testimony at the August 17 hearing it is evident that a number of events had transpired since the filing of the defendant's motion which bore directly upon the present use the plaintiff is making of the Morton building name. Earl West testified that he had become a Kamar buildings distributor on or about June 1, 1971, and had embarked upon the changing of his advertisements in trade journals, his listing in the next telephone directory, and signs appearing on his business buildings and automobile to reflect the change in brand of buildings being distributed. The transformation is admittedly not completed. Nevertheless, the testimony of West is that any future reference to the Morton building name will be limited to the notation that his present operation, Kamar Buildings of Nebraska, Inc., formerly was Morton Buildings of Nebraska, Inc.

The defendant's brief expands upon the reasons for requesting injunctive relief. It is claimed that the defendant corporation has acquired and adopted the Morton building name as its trade name and, moreover, under Nebraska decisional law there exists a superior right to its use. In addition, it is urged that the use of the Morton name by the plaintiff, who at

present distributes buildings of a competitor, is deceptive, confusing, and constitutes an unfair trade practice.

During the hearing on the motion the defendant introduced evidence that the plaintiff has registered the Morton buildings name in Nebraska as a trade name with the Secretary of State. Apparently, the similarity between the names of the defendant corporation and plaintiff has resulted in the defendant's inability to obtain authorization from the Secretary of State to do business in Nebraska under the Morton name.

Both motions for injunctive relief must be tested separately against those factors which a court must weigh before granting this powerful equitable remedy: (1) the rights asserted; (2) irreparable nature of injury; and (3) probability of ultimate success on the merits. See Perry v. Perry, 190 F.2d 601 (C.A.D.C.Cir.1951).

### A. The defendant's motion for preliminary injunction.

The right asserted by each party is the same: to secure full economic benefits from its business activity within the State of Nebraska. Consequently, no party asserts a right that can be said to occupy the higher level in the nature of things. Cf. Kurtenbach v. Brandt, CV71–L–305 (unreported memorandum U.S.D.C.Neb.1971).

Under Nebraska statutory and decisional law the right to use a trade name, concomitant with the collateral benefit of preventing another from using the same or similar name, may be obtained two ways: (1) through formal registration, § 87–208 et seq., R.R.S.Neb. 1943 (1969 Supp.); or (2) through adoption and use of a brand name, without recording it. The defendant relies entirely upon the latter means, referred to as the superior use doctrine, to establish its sole right to use the Morton building name. See Peterson & Co. v. Jay, 158 Neb. 305, 64 N.W.2d 174 (1954); Ransdell v. Sixth Street Food Store, 174 Neb. 875, 120 N.W.2d 290 (1963); Personal Finance Co. v. Personal Loan Serv-

ice, 133 Neb. 373, 275 N.W. 324 (1937); Riggs Optical Co. v. Riggs, 132 Neb. 26, 270 N.W. 667 (1937).

Before a right to superior use can be established, Nebraska decisional law consistently mentions the following six factors as relevant considerations that must be satisfied by the claimant:

(1) It must appear to a reasonable certainty that the adoption of the name was prior in time to that of his adversary. Peterson & Co. v. Jay, supra; Blue Bell Co. v. Frontier Refining Co., 213 F.2d 354 (C.A.10th Cir. 1954).

(2) The use made of the trade name would reasonably apprise the public that it was intended to be used as a distinct appellation for his trade, commodity or place of business. Peterson & Co. v. Jay, supra.

(3) At the time of its use it was not in common use by other like businesses within the locale. Peterson & Co. v. Jay, supra.

(4) The trade name must have been acquired in a particular locale. Riggs Optical Co. v. Riggs, supra; Regent Shoe Mfg. Co. v. Haaker, 75 Neb. 426, 106 N.W. 595 (1906); Ransdell v. Sixth Street Food Store, supra; Peterson & Co. v. Jay, supra.

(5) The trade names must in fact be competing in the same market area. Riggs Optical Co. v. Riggs, supra; Personal Finance Co. v. Personal Loan Service, supra; and Peterson & Co. v. Jay, supra.

(6) Unless injunctive relief be granted, a reasonable likelihood exists of actual or probable deception. Personal Finance Co. v. Personal Loan Service, supra; and Peterson & Co. v. Jay, supra.

For purposes of the present motion it is not necessary to determine the defendant's probable success on the merits because the insufficiency of evidence to show probability of irreparable harm requires a denial of the motion for tempo-

rary injunctive relief. See 3 Barron & Holtzoff, Federal Practice and Procedure, § 1433; 7 Moore's Federal Practice, ¶ 65.04(2); and Love v. Atchison, T. & S. F. Ry. Co., 185 F. 321 (C.A.8th Cir. 1911). Further elaboration on the issue of irreparable harm appears in Part IV B of this opinion.

### B. Plaintiff's countermotion for a preliminary injunction.

Briefs submitted by both counsel perfunctorily conclude that irreparable harm would result to their respective clients' business unless the other party be enjoined from using the Morton building name. In both cases the irreparable harm is thought to spring from the effect on the business of the one by the use of the name by the other. Specifically, the plaintiff contends that its good will could be destroyed by the defendant's potential inadequacies in dealing with the public or the reservoir of good will established by the plaintiff could be tapped by the defendant's exclusive use of the Morton building name. The basis of the defendant's allegation is that good will will be lost by the use of the Morton building name by what is now a competitor, because such use is deceptive and confusing to the public.

The following passage from the plaintiff's brief expounds upon the elusive nature of defining the essence of good will:

"The very nature of good will or reputation is so nebulous a matter that it is impossible of absolute measurement. Although everybody agrees as to its importance, how could plaintiff ever prove in any particular instance the motivating factor behind customer purchasing a Morton building."

The circuit court in Miller v. Commissioner of Internal Revenue, 333 F.2d 400 (C.A.8th Cir. 1964) declared:

"Existence of 'good will' and the value thereof are primarily questions of fact which 'must necessarily be considered in the light of [the] facts in each case.' "

Albeit the intangible nature of the property interest may render in a particular case the assessment of damages difficult, it would be a non sequitur to conclude therefrom that irreparable harm has been shown. See Mann v. Fisher, 51 F.Supp. 550 (U.S.D.C.W.D.Mo.1943). The court in Frank H. Gibson, Inc. v. Omaha Coffee Co., 179 Neb. 169, 180, 137 N.W.2d 701, 711–712 (1965) not only recognized that good will is a valuable right for which the law provides a remedy for unlawful destruction, but continued in the following passage to discuss the difficulty of proof of loss:

"* * * Juries are allowed to act upon inferential and probable as well as direct and positive proof. In Tarry v. Johnston, 114 Neb. 496, 208 N.W. 615, we said: 'In an action at law for the loss of good will, the evidence must contain sufficient data to enable a jury, with a reasonable degree of certainty and exactness, to *estimate* the actual damages.' (Emphasis supplied.)

"In many types of tort actions it may be said to be impossible to determine damages with exactitude and precision. Here, good will was not susceptible of exact pecuniary measurement. All that was required was that it be proved that damage resulted, and that sufficient evidence be adduced to enable the jury to make the most intelligible and accurate estimate which the nature of the case will permit.

"In Colvin v. Powell & Co., Inc., 163 Neb. 112, 77 N.W.2d 900, we held: 'Where it has been proved that damage has resulted and the only uncertainty is the exact amount, it is sufficient if the record shows data from which the extent of the injury can be ascertained with reasonable certainty.' "

I therefore hold that the defendant and plaintiff have an adequate remedy at law to obtain monetary damages for the unlawful destruction or taking away of good will. Additionally, I note an absence of evidence to demonstrate that any deception or confusion has been caused by the continued limited use that the plaintiff

is making and intends to make of the Morton building name. Consequently, the defendant's reliance on Heaton Distributing Co. v. Union Tank Car Co., 387 F.2d 477 (C.A.8th Cir. 1967), does not advance its cause. In *Heaton* Judge Robinson in the district court concluded that the evidence indicated that one company was purposefully palming off a competitor's product as another well-known and reputable product and otherwise using the trade name of its former distributor to deceive potential customers. If such egregious conduct has occurred in the present case, the evidence presented by the defendant does not establish it.

An appropriate order will be entered today.