PERSONAL FINANCE COMPANY OF LINCOLN, APPELLANT, V. PERSONAL LOAN SERVICE, APPELLEE.

275 N. W. 324

FILED OCTOBER 8, 1937. No. 29871.

*Woods, Aitken & Aitken,* for appellant.

*Max G. Towle, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE and CARTER, JJ., and ELDRED and CHASE, District Judges.

CHASE, District Judge.

This is a suit in equity, in which the plaintiff seeks to enjoin the defendant from using its corporate name, claiming the use thereof constitutes unfair competition. The trial court, by its decree upon the merits, denied the injunction, and the plaintiff presents the record here for review.

The pleadings are so involved we can only epitomize them. The plaintiff asserts that it is a corporation organized under the laws of the state of Delaware, licensed to transact the business of a small loan and finance company in Nebraska, under the name of Personal Finance Company, of Lincoln, and is engaged in such business at Lincoln; that it began business on June 15, 1931; that on the 6th day of June, 1935, the defendant was incorporated under the laws of the state of Nebraska to carry on a similar business under the corporate name of Personal Loan Service; that one Joseph J. Hynes had been active manager of plaintiff's business until the incorporation of the defendant, at which time he left plaintiff's employ and organized the defendant corporation for the purpose of carrying on a finance business, also at Lincoln, in competition with the plaintiff; that the plaintiff's business had been built up because of its reputation for honesty and fair dealing; that the defendant Hynes, during this period, was its chief managing officer; that the plaintiff's name had thus become a valuable trade-name; that the said Hynes

and his associates knew these facts, and for the purpose and with the intention of appropriating the good-will and trade-name of the plaintiff adopted its corporate name and advertised such name through newspapers, telephone directories and listings; that the defendant adopted the name in pursuance of a preconceived fraudulent intention of deceiving the customers of the plaintiff and winning them over to the defendant; that customers intending to contact plaintiff were deceived, misled, and diverted, and induced to communicate with the defendant, with the result that plaintiff lost considerable business through the defendant's unfair conduct, and the defendant thereby became enriched and benefited to the damage of the plaintiff; that the intention of the defendant in adopting a name of such similarity to that of the plaintiff was to confuse the customers of the plaintiff and induce them to deal with the defendant under the belief they were dealing with the plaintiff; that the damages resulting from such conduct are not susceptible of adequate legal measurement, but that they have accrued and will continue to accrue in the future, and plaintiff is without adequate remedy at law.

The defendant, after traversing the general allegations of the petition, admits that it is incorporated under the name Personal Loan Service and is doing business as such. It avers as an affirmative defense that the secretary of state has issued a permit to the defendant to use such trade-name.

From the evidence it appears that the plaintiff began business in Lincoln in 1931, spent approximately $200 a month for advertising; that it made about 1,200 loans every year; that one Joseph J. Hynes, the secretary-treasurer of the defendant, was employed by the plaintiff as its managing officer in June, 1932, and continued in such employment about three years; that he was assisted by one Fern Beardsley as cashier; that in 1935 Hynes left the employ of the plaintiff voluntarily, and with one Waller organized the defendant company; that shortly after the organization of the defendant company the cashier, Fern Beardsley, volun-

tarily left the employ of the plaintiff and became cashier of the defendant; that both Mr. Hynes and Miss Beardsley, during their employment with plaintiff, made contact with plaintiff's customers at its place of business in the Sharp building in Lincoln, Nebraska. The defendant's place of business is in the Federal Securities building, immediately across the street from that of the plaintiff. During the time Hynes was in its employ the plaintiff contacted about 2,600 customers. It is claimed that about 35 of these customers have since transferred their business from the plaintiff to the defendant. Whether this abandonment of the plaintiff by these customers is due to confusion, business dissatisfaction, or otherwise, is not disclosed by the record; neither is their identity established. The plaintiff, in its endeavor to establish the charge of confusion, proffered a witness who testified he had previously been a customer of the plaintiff, and had some loans with them; that he knew Hynes had moved his offices to the Federal Securities building; that such information had been gleaned by newspaper advertisements. While he admitted that he was aware that Hynes was not then working for plaintiff, he was confused, however, in the nature of Hynes' business; that he believed Hynes was now engaged in the insurance business. There was also offered in evidence a letter written by a man at Fairmont, by which he sought to procure a loan, the envelope having been addressed to the plaintiff, the inclosed letter addressed to the defendant. These were the only specific instances in which the plaintiff sought to prove any particular confusion of customers.

The stationery adopted by defendant at the commencement of its business bore striking similarity to that previously used by the plaintiff.

The question for decision here is whether the manner in which the defendant was conducting its business under its corporate name amounts to unfair competition. The courts say that unfair competition means any conduct in a trade or business whereby one party, by deceptive means, transacts his business with the public in such a manner as to

leave the public with the impression that they are actually dealing with another. The doctrine involves misrepresentation, either express or implied. *Peters Milling Co. v. International Sugar Feed No. 2 Co.*, 262 Fed. 336. It will be noted that to invoke this rule some deception must be practiced upon the public whereby it is likely to become misled or confused. The effect of the defendant's conduct upon the public is the gist of plaintiff's right to equitable interference. Such deception will not arise from its effect upon a particular class. On the other hand, it cannot be logically argued that no deception takes place because the cultured, alert, or perceptive are not misled, nor should it be argued that because the untutored or indolent, not possessing the capacity to analyze or the energy to investigate, are likely to be misled. Neither constitutes the true test. The law ordinarily does not recognize extremes, but concerns itself in this particular with what effect the defendant's conduct would produce upon that vast multitude of persons of ordinary intelligence, which may include both extremes, but not necessarily confined to either. Such is the meaning of the word "public" in this connection. If then it can be said that ordinary persons, dealing with ordinary caution, are likely to be misled, then it follows that deception is the natural and probable result of the defendant's acts. Either actual or probable deception, or confusion, must be shown to entitle the plaintiff to the protection of the rule. This is usually accomplished by showing circumstances from which courts might justly conclude that persons are likely to transact business with one party under the belief they are dealing with another. Where there is no probability of deception, there can be no unfair competition. *McLean v. Fleming*, 96 U. S. 245, 24 L. Ed. 828; *Charles Broadway Rouss, Inc., v. Winchester Co.*, 300 Fed. 706.

While rival tradesmen may lawfully compete for the patronage of the public, they have no right, by either imitating devices, or unfair means, to beguile prospective customers into dealing with them under the erroneous be-

lief that they are dealing with their rivals. The right to protection is not based on the harmless use of particular words, or a name, but upon the likelihood of an appropriation of the competitor's business to his injury under a mistaken belief. To entitle the plaintiff to such relief, it is not necessary to prove that deception has actually resulted, but sufficient to show a calculation to deceive, and from all the facts and circumstances deception and confusion is likely to arise. *Carter Transfer & Storage Co. v. Carter*, 106 Neb. 531, 184 N. W. 113; *Riggs Optical Co. v. Riggs*, 132 Neb. 26, 270 N. W. 667; *Atlas Assurance Co. v. Atlas Ins. Co.*, 138 Ia. 228, 235, 112 N. W. 232, 114 N. W. 609; *Weisman v. Kuschewski*, 243 Mich. 223, 219 N. W. 937.

Courts are quite unanimous in declaring that descriptive terms or generic words are not susceptible of exclusive appropriation by any one, but may be used by all the world in an honestly descriptive or nondescriptive manner. This rule rests upon the theory that every one should have the right to properly describe his goods or business, and should be able to use all terms necessary or appropriate for that purpose. It has also been said that corporate names made up solely of generic or descriptive terms, ordinarily cannot be exclusively appropriated. *Amoskeag Mfg. Co. v. Trainer*, 101 U. S. 51, 25 L. Ed. 993.

There seems to be one well-recognized exception to the general rule. The courts hold that, even though the words used may be descriptive or generic in their nature, if by their use, either singly or in combination, one person intends to avail himself of another's reputation, and is enabled to transact his business as that of another, it may become unlawful. In such cases intent or calculation to accomplish the result must be established. *American Wine Co. v. Kohlman*, 158 Fed. 830. In the case just cited the names of plaintiff and defendant were identical, and the court held, notwithstanding such identity, the plaintiff would not be entitled to enjoin their use unless he established a specific intent on the part of the defendant to transact its business as the business of the plaintiff.

Where the plaintiff does not establish a reasonable likelihood that deception will result by reason of the name under which the defendant transacts business, courts will refuse injunctive relief. *Fidelity Bond & Mortgage Co. v. Fidelity Bond & Mortgage Co.*, 37 Fed. (2d) 99.

Generic words whose primary meaning is merely descriptive of the business to which they are applied, or are such as are in common use for that purpose, or such as to convey facts applicable with equal truth and right to others, cannot be exclusively appropriated as a trade-name. As a matter of law, no one is entitled to the exclusive use of the descriptive adjectives of the language. *Iowa Auto Market v. Auto Market & Exchange*, 197 Ia. 420, 197 N. W. 321.

The law being abhorrent of monopolies, courts will not, except where unfair competition is clearly established, hold that an individual or corporation has acquired such a property right in the use of a word, or combination of words, that it can exclude all others from the use of such words or combinations, bearing some similarity in import but dissimilar in meaning.

Complaint is made that the trial court found that the permit to transact business issued to the defendant by the secretary of state operates in the nature of *res adjudicata*. While it appears that the trial court made no such positive finding, we agree that such language should not have been used. Courts are creatures of the judicial department of government, constituted for the purpose of reaching conclusions of both law and fact as to all questions justiciable. The judicial department need not recognize a finding of fact made by an officer of the executive department as binding upon it. The issuance of the permit by the secretary of state was purely a ministerial act. The findings of fact made by an officer of the executive department cannot be held to be binding or conclusive upon the courts so as to bring it within the rule of *res adjudicata*.

After making a *de novo* investigation of all the evidence presented by the record, we think the proper inference to be drawn therefrom is that the defendant, by adopting its

trade-name and conducting its business thereunder, intended to mislead and confuse the customers of the plaintiff, and to beguile them into dealing with the defendant under the belief that they were dealing with the plaintiff; and continued confusion is likely to result from such conduct. We do not believe the conclusions reached by the trial court are correct. The case is, therefore, reversed.

REVERSED.