**MIDWAY MFG. CO., Plaintiff,**

v.

**Dale DIRKSCHNEIDER, et al., Defendants.**

**No. CV 81-0-243.**

United States District Court,
D. Nebraska.

Sept. 1, 1983.

---

Lindsey Miller-Lerman, Omaha, Neb., for plaintiff.

Dale Dirkschneider and others, pro se.

BEAM, District Judge.

This matter is before the Court upon the motion of the plaintiff, Midway Mfg. Co. [Midway], for partial summary judgment against Dale Dirkschneider and Harold Peterson, individually, and against their business entity A–1 Machines (filing 132), for copyright and trademark infringement under 17 U.S.C. §§ 101 *et seq.* and section 43(a) of the Lanham Act of 1946 respectively, and for deceptive trade practices prohibited by the Nebraska Uniform Deceptive Trade Practices Act, *Neb.Rev.Stat.* § 87–

302 (1980 Supp.). While summary judgment is an extraordinary remedy, *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980), the present case is properly concluded by the granting of the plaintiff's motion for partial summary judgment on the issue of liability.

Midway is a designer, manufacturer and seller of coin-operated electronic video games. Three of these games, Pac-Man, Galaxian and Rally-X, are the subject matter of this lawsuit and of this motion. Midway acquired the rights to each of the three games from a Japanese company named Namco, Ltd. Shortly thereafter, Midway registered with the Copyright Office its United States copyrights in the audiovisual works embodied in the three games.

The audiovisual games involved here consist of a cabinet containing electronic circuitry and a screen upon which the visual images of the game are projected. The electronic circuitry contains printed circuit boards that produce the unique action and sound effects of each game. A game may be copied by electronically reproducing the information stored in the printed circuit boards.

Midway sells its games to regional distributors who in turn sell them to operators. The operators place the machines in arcades and other places for public use. The defendants are two such operators who purchased and distributed fully-assembled video games and printed circuit boards that allegedly copy the Midway games and trademarks.

Defendants Peterson and Dirkschneider purchased, through their partnership, A–1 Machines, at least ten "copy games" and three conversion kits from their distributor. The game names on the headboards of these video cabinets featured variations of Midway's trademarks: "Pac Man" was replaced by "Mighty Mouth"; "Galatian" was replaced by "Galactic Invaders." Midway's "Rally-X" name was appropriated *in toto* onto the defendants' version of the game. None of the defendants' games had "Midway" imprinted on the cabinet. The strategy, design, and sound effects of these games resemble their Midway counterparts. The defendants resold these games or kits, or placed them in various locations for public use. The defendants divided the proceeds with the owners of the premises where the games were played.

■ Copyright infringement is established by proving that the defendants engaged in the unauthorized copying (in the form of reproduction, adaptation, public distribution, public performance or public display) of Midway's valid copyrights. *Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157, 1162 (9th Cir.1977); 3 *M. Nimmer on Copyright,* 13.01, p. 13–3 (1982) (hereinafter "Nimmer"). Therefore, Midway must prove that it was the owner of valid copyrights on the video games and that the defendants performed and distributed games copied from plaintiff's audiovisual works. *Midway Mfg. Co. v. Dirkschneider,* 543 F.Supp. 466, 479 (D.Neb.1981); *see Ferguson v. National Broadcasting Co.,* 584 F.2d 111, 113 (5th Cir.1978).

■ Under the Copyright Act, a certificate of copyright registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Plaintiff's certificates of copyright registration for the Pac-Man, Galaxian and Rally-X games have been offered into evidence and neither defendant has contested their validity or existence. By this evidence, the plaintiff has made a prima facie showing that its video games are proper subjects for copyright protection, that the statutory formalities of registration have been satisfied, and that the plaintiff is the owner of the copyright. 3 *Nimmer* 12.11[A], [B], [C] (1980); *see Dollcraft Industries, Ltd. v. Well-Made Toy Co.,* 479 F.Supp. 1105, 1114 (E.D.N.Y.1978).

■ Having observed the validity of plaintiff's copyright, we now proceed to the question of infringement. Because of the difficulty of providing direct evidence of copying, a plaintiff in a copyright action most often demonstrates copying by establishing (1) access by defendants to plaintiff's work and (2) a substantial similarity

between defendants' work and plaintiff's. *Ferguson v. National Broadcasting Co., supra,* 584 F.2d at 113 (5th Cir.1978); *Midway Mfg. Co. v. Dirkschneider, supra,* 543 F.Supp. at 482. In the present case, the defendants have admitted to seeing the Midway games (Dirkschneider Depo. 7; Peterson Depo. 18–19). In any event, the games are so strikingly similar that copying may be inferred without direct proof of access. *Testa v. Janssen,* 492 F.Supp. 198, 203 (E.D.Pa.1980); *Midway Mfg. Co. v. Dirkschneider, supra,* 543 F.Supp. at 482–83.

■ The plaintiff's Pac-Man game has a player puck which pursues and is pursued by four differently colored monsters. The defendants' Mighty Mouth game is practically identical to the plaintiff's Pac-Man game. The color and shape of the characters and the playing board are the same. The characters move in the same direction and stop at the same place. The unique sound effects of each game are also the same. The pace and progression of the play in each game appears identical.

The plaintiff's Galaxian game depicts a formation of aliens approaching the player's defense ship. The defendants' Galatic Invaders is substantially similar to the plaintiff's Galaxian game. The unique shape, strategy and movement of the players is the same in both games. The distinctive sound effects of each game are identical.

The plaintiff's Rally-X game is a car racing game in which the player is chased through a maze by several pursuit cars. The player may escape the pursuit cars by releasing a smoke screen which sends the pursuit car into a spin. The defendants' version of the Rally-X game incorporates a smoke-screen escape device and spin-out identical to the plaintiff's. Again, the distinctive sounds made when the games are played are the same.

The similarities recited above are merely representational and are not intended to be exhaustive. In virtually every detail, the defendants' games are identical to the plaintiff's. *See Sid and Marty Krofft Television v. McDonald's Corp., supra,* 562 F.2d at 1164; *Franklin Mint Corp. v. National Wildlife Art Exchange,* 575 F.2d 62, 65–66 (3rd Cir.), *cert. denied,* 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193 (1978). A reasonable observer, comparing the overall appearance of these games, could only conclude that the Mighty Mouth, Galactic Invaders, and Rally-X machines and printed circuit boards resold and displayed for public use by the defendants, copied plaintiff's unique expression of ideas for coin-operated video games. *See, e.g., McMahon v. Prentice-Hall, Inc.,* 486 F.Supp. 1296, 1304 (E.D.Mo. 1980); *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 907, 908–09 (3rd Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). For the reasons given above, the Court finds that the defendants' games are substantially similar to the plaintiff's work and that a prima facie case of infringement has been established.

■ The defendants assert two defenses. First, the defendants contend that they did not know that the machines they purchased were copies of the Midway machines. Absence of scienter is not a valid defense to a charge of copyright infringement. *The Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 456 F.Supp. 531, 537 (S.D.N.Y. 1977), aff'd, 592 F.2d 651 (2nd Cir.1978); *Samet & Wells, Inc. v. Shalom Toy Co., Inc.,* 429 F.Supp. 895, 904 (S.D.N.Y.1977), *aff'd,* 578 F.2d 1369 (2nd Cir.1978); *Roy Morser v. Bengor Product Co., Inc.,* 283 F.Supp. 926, 928 (S.D.N.Y.1968). The law is well settled that liability attaches to the so-called "innocent infringer" regardless of intent.

■ Second, the defendants' attempt to avoid liability by demonstrating that they did not manufacture the copies which were distributed and displayed. The Copyright Act clearly comprehends resale and public display of unlawfully copied machines within the ambit of activities prohibited. "The owner of copyright has the exclusive rights . . . (3) to distribute copies . . . of the copyrighted work to the public by sale or transfer of ownership, or by rental, lease or lending; [and] (4) in the case of . . . audio visual works, to perform the copyrighted work publicly." 17 U.S.C. § 106(3) and (4).

*See also, Broadcast Music, Inc. v. United Shoe Corp.,* 678 F.2d 816, 817 (9th Cir.1982) (distributor's liability in copyright infringement action for publicly performing the copied games flows directly from 106(4)). Therefore, the defenses presented are without merit.

■ Under Lanham Act 43(a), 15 U.S.C. § 1125(a), defendants are liable for infringement of the unregistered trademarks "Pac-Man," "Galaxian" and "Rally-X." Liability lies under section 43(a) when it is determined that materials used by the defendants created a likelihood of confusion among the consuming public. *Metric & Multistandard Components v. Metric's, Inc.,* 635 F.2d 710, 714 (8th Cir.1980). The evidence shows that on at least one occasion, a customer called A–1 Machines and asked to purchase a Pac-Man game. The defendant Dirkschneider offered to sell the customer a Mighty Mouth game, explaining that it was very similar to the Pac-Man game. In the defendants' opinion, one of the selling points of the Mighty Mouth game was its similarity to the Pac-Man game. The fact that the Midway and counterfeit goods were sold side-by-side by the defendants within the same channels of commerce offends the Lanham Act. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979) (goods produced by alleged infringer compete with those of trademark owner held infringement of trademark).

The likelihood of confusion can also be proven by defendants' unauthorized use of Midway's trademarks on substantially identical products. *Id.* at 352. The evidence demonstrates that, among other incidents of trademark misappropriation, the defendants placed the "Rally-X" mark on games similar or identical to the Midway machines; the name "Galactic Invaders" was used to suggest Midway's "Galaxian" game.

■ The facts supporting defendants' liability for trademark infringement also support a cause of action under the Nebraska Deceptive Trade Practices Act, *Neb.Rev. Stat.* § 87–302 (1980 Supp.). The Act prohibits a broad panoply of deceptive trade practices, including passing off goods and services of another as your own *id.* at 87–302(1), and causing confusion in the minds of consumers as to the origin of goods *id.* at 87–302(2). Plaintiff correctly contends that defendants' misuse of Midway's trademark constitutes a violation of the Nebraska Deceptive Trade Practices Act, *Personal Finance Co. of Lincoln v. Personal Loan Service,* 133 Neb. 373, 275 N.W. 324 (1937) (trademark infringement constitutes "unfair competition" under the Nebraska Act); *in accord, Kirsch Fabric Corp. v. Brookstein Enterprises, Inc.,* 209 Neb. 666, 309 N.W.2d 328 (1981).

■ Partial summary judgment for the plaintiff is appropriate in copyright and trademark infringement actions. *Broadcast Music, Inc. v. United States Shoe Corp., supra,* 678 F.2d at 816 (copyright); *New West Corp. v. NYM Co. of Cal., Inc.,* 595 F.2d 1194, 1203 (9th Cir.1979) (trademark). A partial summary judgment on the issue of liability is specifically contemplated by *Fed.R.Civ.P.* 56(c). There is no material fact or issue in dispute. Defendants have infringed Midway's copyrights and trademarks by reselling and putting on public display imitation Midway Pac-Man, Galaxian, and Rally-X games. Partial summary judgment motions have been granted in two parallel video game infringement actions brought by Midway, *see* Order Granting Summary Judgment, *Midway Mfg. Co. v. Marcon Industries, Inc.,* No. 81–470 (D.Fla.1982); Transcript, December 10, 1982, *Midway Mfg. Co. v. KK Industrial Service Co.,* 81–676 (D.Ariz.1982), and is appropriate here. An order will be issued in accordance with this memorandum.