THE EQUITABLE BUILDING AND LOAN ASSOCIATION OF GRAND ISLAND, NEBRASKA, A FEDERAL SAVINGS BANK, APPELLEE, v. EQUITABLE MORTGAGE CORPORATION, APPELLANT.

662 N.W.2d 205

Filed May 27, 2003.   No. A-01-919.

Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Earl D. Ahlschwede, of Mayer, Burns, Ahlschwede & Koenig, for appellee.

Sievers, Inbody, and Moore, Judges.

Moore, Judge.

## INTRODUCTION

Equitable Building and Loan Association of Grand Island, Nebraska, a federal savings bank (Equitable Building and Loan), filed an action in the district court for Hall County seeking to enjoin Equitable Mortgage Corporation (Equitable Mortgage) from using the name "Equitable" in providing financial services within the State of Nebraska. The trial court determined that actual confusion resulted from there being two " 'Equitables' " in the home mortgage lending business in Grand Island and enjoined Equitable Mortgage from using the name "Equitable" within

Grand Island or within 60 miles of the city limits of Grand Island. For the following reasons, we reverse, and remand with directions to dismiss.

## BACKGROUND

Equitable Building and Loan is a federal savings bank located in Grand Island with three office locations. It was formed initially as a mutual association in Nebraska and commenced doing business in Grand Island in March 1882, converting to a federal savings bank chartered under federal law in 1995. Equitable Building and Loan promotes itself as a full-service bank with the slogan "Your Next Bank" to emphasize its banking services. It is the third largest federal savings bank in Nebraska and offers its customers a full range of banking services, including mortgage loans, consumer loans, home equity loans, debit and ATM cards, safe deposit boxes, a travel club for seniors, certificates of deposit, checking services, individual retirement accounts, money market accounts, savings accounts, and voice-access banking. Equitable Building and Loan's primary area of business is Hall County and within a 50- to 60-mile radius of Grand Island. In addition to Hall County, it also does mortgage lending in Adams, Buffalo, Hamilton, Howard, and Merrick Counties.

Although Equitable Building and Loan engages in other areas of lending, 75 percent of its loans are residential real estate loans. In the year 2000, Equitable Building and Loan closed between 300 and 350 conventional mortgage loans. The company does not handle subprime loans. Subprime lending, as it relates to mortgage loans, means lending to individuals who do not qualify for a bank's best lending rate, who do not meet the requirements of the secondary market, who have primary housing debt-to-income ratios greater than 26 to 30 percent, and who have total debt-to-income ratios greater than 36 to 40 percent. Equitable Building and Loan does have a procedure for referring such loans to another lender for review, and often, if that loan is approved by the subprime lender, Equitable Building and Loan will then receive a fee for that referral.

Equitable Building and Loan has a substantial budget for newspaper, radio, television, and other advertising. Its 2000 expenditures for advertising in the Grand Island and surrounding area

were over $341,000. Equitable Building and Loan developed a logo in approximately late 1998 or early 1999 that features a stylized pyramid next to the word "Equitable" in large type. Some of Equitable Building and Loan's newspaper advertising uses the logo, the word "Equitable," and the company's slogan, but does not include the company's full name. Since approximately 1999, Equitable Building and Loan employees have answered the telephone with the phrase " 'Good morning, Equitable,' " or " 'Good afternoon, Equitable.' " Equitable Building and Loan's offices have signs prominently featuring the word "Equitable" in large type next to the company's logo, with the company's full name in smaller type.

Equitable Building and Loan advertises in the Grand Island yellow pages under the heading "Mortgages," as well as under the headings "Banks" and "Savings and Loans." Its yellow pages advertisement is blue with white type, prominently featuring its pyramid logo in green, with its main telephone number and the word "Equitable" in large type. The slogan "Your Next Bank" is printed under the word "Equitable." The company's full name, its three street addresses with their respective telephone numbers, its Web site address, and the phrases "Full-Service" and "Home-Owned Since 1882" appear in much smaller type. Equitable Building and Loan also has a black and white display advertisement in the white pages with similar content to its yellow pages advertisement, again prominently featuring its pyramid logo, the word "Equitable" in large type, and the slogan "Your Next Bank."

Equitable Mortgage was incorporated in Missouri in 1996 by David Olson and Tom Mullen. It initially opened an office in Lincoln, Nebraska, followed by offices in Springfield, Missouri, and Omaha, Nebraska. Equitable Mortgage opened its office in Grand Island in February 2000. Before choosing the name Equitable Mortgage, Olson verified that the name was available in Nebraska by calling the Secretary of State's office. In 1996, Equitable Mortgage's first year of business, it did a limited amount of business in Hall County, and each year prior to opening an office there, its business in Hall County increased. Mullen testified that at the time Equitable Mortgage made its decision to open an office in Grand Island, he knew that there was a mortgage-lending firm called Equitable Building and

Loan that had referred some business to Equitable Mortgage, but was not aware that Equitable Building and Loan was located in Grand Island. In addition to Nebraska and Missouri, Equitable Mortgage is also licensed to do business in Iowa and South Dakota, and it actively makes loans in those four states. At the time of trial, it was in the process of becoming relicensed to do business in Kansas.

Equitable Mortgage is both a mortgage broker and a mortgage banker. A mortgage broker simply brings the borrower and the lender together, while a mortgage banker actually lends its own money, closes the loans, earns a service premium for the loans, and then sells the loans to another bank. Equitable Mortgage makes most of its mortgage loans as subprime loans, focusing on customers whose credit ratings would make it difficult for them to obtain traditional or conventional loans, but it also offers conventional loans. Olson testified that it is difficult for Equitable Mortgage to compete directly with banks similar to Equitable Building and Loan on conventional loans due to the fees Equitable Mortgage must charge because of selling its loans to other financial institutions. Equitable Mortgage solicits business primarily through referrals from Realtors, insurance agents, and other financial professionals. Equitable Mortgage does not make consumer loans or provide any of the other banking services offered by Equitable Building and Loan. Of the 41 loans made by Equitable Mortgage's Grand Island office during the year 2000, it closed 30 subprime loans and 11 conventional loans, 73 percent and 26 percent, respectively, of that office's business. Equitable Mortgage solicits business in Nebraska in Adams, Antelope, Butler, Clay, Colfax, Dodge, Douglas, Dundy, Fillmore, Frontier, Gage, Garfield, Hall, Holt, Keith, Lancaster, Lincoln, Madison, Pierce, Platte, Saline, Sarpy, Sherman, and Wayne Counties.

Equitable Mortgage does no newspaper, radio, or television advertising in Hall County. The year before Equitable Mortgage opened its Grand Island office, it had a listing in the yellow pages of the Grand Island telephone directory showing its Lincoln address and a toll-free telephone number. Equitable Mortgage has continued to be listed in the Grand Island yellow pages since opening an office there. During the first 4 years in

which Equitable Mortgage did business in Nebraska, Equitable Building and Loan never objected to Equitable Mortgage's yellow pages advertisements or its use of the name "Equitable."

Equitable Mortgage advertises in the yellow pages under the heading "Mortgages." Its yellow pages advertisements are black and white, have the slogan "Home Loans for Any Purpose," and include Equitable Mortgage's name, logo, telephone number, street address, and Web site address. The words "Equitable" and "Mortgage" are printed in type of equal size, with the word "Corporation" below them in fine print. Equitable Mortgage's advertisements indicate that it specializes in real estate purchases and refinancing, debt consolidation, "FHA/VA" loans, 100-percent purchase programs, conventional loans, home improvement, no- and slow-credit programs, and low rates. The advertisements also indicate that Equitable Mortgage has 25 years' experience. Equitable Mortgage's logo consists of a paper and a quill pen, and it tries to use that logo on as many of its formal documents and pieces of correspondence as possible. In the white pages, Equitable Mortgage appears with a bold type listing, but not a display advertisement.

Before opening the Grand Island office, Olson called on businesses in the Grand Island area, trying to develop referrals, and Equitable Mortgage received a substantial number of referrals from the area prior to the year 2000. In the second half of 1999, Olson called on two loan officers at Equitable Building and Loan. At that time, Equitable Mortgage had not yet decided to open a Grand Island office. Soon after the sales call, Equitable Mortgage received three or four calls from potential borrowers who had been referred to it by Equitable Building and Loan and Equitable Mortgage received a potential borrower's completed loan application documents that had been forwarded by Equitable Building and Loan.

Equitable Mortgage's Grand Island office is located approximately one block from Equitable Building and Loan's drive-in facility and about one and a half blocks from Equitable Building and Loan's main office. There is a sign outside Equitable Mortgage's Grand Island office bearing its logo and the company's full name, with the word "Corporation" being in smaller type beneath the words "Equitable Mortgage."

Shortly after the Grand Island office opened, Olson and Mark Tracy, the office manager for Equitable Mortgage's Grand Island office, called on representatives of Equitable Building and Loan. Olson thought that they had been invited to make a sales presentation, but Equitable Building and Loan was actually concerned about Equitable Mortgage's move to Grand Island and use of the name "Equitable Mortgage." After the meeting, Olson sent Equitable Building and Loan a letter dated February 14, 2000, explaining that Equitable Mortgage could not compete with Equitable Building and Loan on conventional loans because of Equitable Mortgage's higher underwriting and processing fees and that Equitable Mortgage's primary goal in getting into conventional lending was to "take advantage of the refinance boom." On February 17, Equitable Building and Loan's counsel sent a letter demanding that Equitable Mortgage cease using the name "Equitable" in the Grand Island area.

Equitable Building and Loan filed a petition for injunctive relief on March 20, 2000, alleging that Equitable Mortgage's name was deceptively similar to Equitable Building and Loan's name and was a deceptive trade practice as defined by Neb. Rev. Stat. § 87-302 (Reissue 1999). Equitable Building and Loan further alleged that the use of the name "Equitable Mortgage" would tend to lead to confusion between the parties on the part of customers, prospective customers, creditors, suppliers, and others. Equitable Building and Loan alleged that it had continuously used the name "Equitable" in connection with providing loan services in Grand Island since 1882 and that this trade name had acquired a secondary meaning apart from its primary and generic significance in the minds of the public.

At trial, to support its allegations of confusion between the parties, Equitable Building and Loan presented evidence by members of the public and others interested in mortgage lending. This evidence indicated that individuals have come to one of Equitable Building and Loan's offices looking for employees of Equitable Mortgage. There was also an incident where an officer from another bank called Equitable Building and Loan in the process of attempting to contact an employee of Equitable Mortgage. In another instance, a customer of Equitable Mortgage told a Realtor that he had arranged financing through "Equitable

with Mark." The Realtor incorrectly assumed that the customer was referring to Equitable Building and Loan and its loan officer Mark Kersten. After several telephone calls between the Realtor and her client, the Realtor discovered that the client really meant Mark Tracy at Equitable Mortgage. Another real estate broker testified that he was confused when he received solicitations from Equitable Mortgage, thinking that the solicitation had come from Equitable Building and Loan. Both of the Realtors who testified at trial to instances of personal confusion agreed that the difference between the parties was now clear to them. Similarly, the president of Equitable Building and Loan, who was employed by another bank when Equitable Mortgage's Grand Island office opened, testified that "when it first came out, I had — I had a question but as a member of the financial community, I was able to discern the difference."

Kersten testified about people calling him and inquiring if he was with "the Equitable downtown that's always been here" or "the other company." Kersten also indicated that some confusion arises from the fact that he has the same first name as Mark Tracy at Equitable Mortgage. The post office has delivered mail, correctly addressed to Equitable Mortgage, to Equitable Building and Loan. One Equitable Building and Loan employee estimated that she receives six to seven telephone calls per month from persons attempting to contact Equitable Mortgage, while another indicated that she receives approximately two such calls per week.

Grand Island attorney Ronald Depue and Equitable Building and Loan's counsel were representing the buyer and seller, respectively, in a real estate transaction. Depue testified that the buyer told him that financing had been arranged through "Equitable." Depue assumed that his client meant Equitable Building and Loan, when the client had actually arranged financing through Equitable Mortgage. The confusion resulted in a problem with ordering title insurance for the transaction, but this problem was resolved with Equitable Mortgage's cooperation.

Tracy testified that customers have come to his office and have indicated that they had been looking for him at Equitable Building and Loan's office. Tracy did not recall any customers contacting his office looking for Kersten. Tracy had received

telephone calls from people attempting to reach Equitable Building and Loan. Tracy has also had customers ask him whether Equitable Mortgage was a part of Equitable Building and Loan, and in response, he has informed those customers that the two companies are different businesses.

The district court entered an order on July 17, 2001, enjoining Equitable Mortgage from using the word "Equitable" within the city limits of Grand Island and an area within 60 miles of the Grand Island city limits. The trial court cited *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994), and found that actual confusion, whether intentionally or unintentionally perpetrated, resulted from there being two "Equitables" in the home mortgage lending business in Grand Island. The trial court found that Equitable Building and Loan spent well over 100 years and a considerable amount of money establishing the trade name "Equitable" and making it synonymous with real estate mortgages in the trade area sought to be protected. Equitable Mortgage subsequently perfected its appeal to this court.

## ASSIGNMENTS OF ERROR

Equitable Mortgage asserts, restated, that the district court erred in finding that Equitable Building and Loan had sustained its burden of proving unfair competition by Equitable Mortgage and in permanently enjoining Equitable Mortgage from using the name "Equitable" within the city of Grand Island and within 60 miles of the Grand Island city limits.

## STANDARD OF REVIEW

An action for injunction sounds in equity. *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted

unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Nebraska Irrigation, Inc. v. Koch, supra.*

## ANALYSIS

In a case for trade name infringement, the plaintiff has the burden to prove by a preponderance of the evidence the existence of (1) a valid trade name entitled to protection and (2) a substantial similarity between the plaintiff's and the defendant's names, which would result in either actual or probable deception or confusion by ordinary persons dealing with ordinary caution. *Nebraska Irrigation, Inc. v. Koch,* 246 Neb. 856, 523 N.W.2d 676 (1994).

The evil sought to be eliminated by trade name protection is confusion. The burden is upon the plaintiff to show whether the likelihood of such confusion exists. *Id.* The likelihood of confusion in the use of trade names can be shown by presenting circumstances from which courts might conclude that persons are likely to transact business with one party under the belief they are dealing with another party. If the similarity is such as to mislead purchasers or those doing business with the company, acting with ordinary and reasonable caution, or if the similarity is calculated to deceive the ordinary buyer in ordinary conditions, it is sufficient to entitle the one first adopting the name to relief. *Id.*

One of the earliest Nebraska cases concerning trade name litigation is *Miskell v. Prokop,* 58 Neb. 628, 79 N.W. 552 (1899). In that case, the Nebraska Supreme Court upheld the trial court's determination that the plaintiff who used the trade name "Racket Store" for his mercantile business was not entitled to enjoin the defendant from his use of the name "New York Racket Store" for a similar business located near the plaintiff's business in the same town. The sign in front of the defendant's store displayed the words "New York" in much smaller letters than the words "Racket Store." The Nebraska Supreme Court held that in view of all of the evidence, including a consideration of the entire wording of the signs, it could not say that the trial court's ruling was wrong.

In *Personal Finance Co. v. Personal Loan Service,* 133 Neb. 373, 275 N.W. 324 (1937), the plaintiff was a small loan company

licensed to transact business under the name "Personal Finance Company." The defendant, "Personal Loan Service," was formed by a former manager of the plaintiff. This individual quit work for the plaintiff, formed the defendant corporation, and opened a similar business across the street from the plaintiff. The evidence suggested that about 35 of the approximately 2,600 customers contacted by this individual when working for the plaintiff had since transferred their business to the defendant, although the reason for their transfers was not disclosed by the record. The defendant also hired away one of the plaintiff's cashiers and adopted business stationery strikingly similar to that used by the plaintiff.

The trial court denied the plaintiff's request for an injunction, and the Nebraska Supreme Court reversed that decision. The Supreme Court defined the issue as follows:

> The question for decision here is whether the manner in which the defendant was conducting its business under its corporate name amounts to unfair competition. The courts say that unfair competition means any conduct in a trade or business whereby one party, by deceptive means, transacts his business with the public in such a manner as to leave the public with the impression that they are actually dealing with another. The doctrine involves misrepresentation, either express or implied. [Citation omitted.] It will be noted that to invoke this rule some deception must be practiced upon the public whereby it is likely to become misled or confused. The effect of the defendant's conduct upon the public is the gist of plaintiff's right to equitable interference.

*Id.* at 376-77, 275 N.W. at 326.

The Supreme Court also stated:

> While rival tradesmen may lawfully compete for the patronage of the public, they have no right, by either imitating devices, or unfair means, to beguile prospective customers into dealing with them under the erroneous belief that they are dealing with their rivals. The right to protection is not based on the harmless use of particular words, or a name, but upon the likelihood of an appropriation of the competitor's business to his injury under a mistaken belief. To entitle the plaintiff to such relief, it is not necessary to prove that deception has actually resulted, but sufficient to

show a calculation to deceive, and from all the facts and circumstances deception and confusion [are] likely to arise.

*Id.* at 377-78, 275 N.W. at 327.

Following its de novo review of the case, the Supreme Court concluded that the defendant intended to mislead and confuse the plaintiff's customers, that the defendant intended to beguile those customers into dealings with the defendant under the belief that they were dealing with the plaintiff, and that continued confusion was likely to result from such conduct.

In *Dahms v. Jacobs*, 201 Neb. 745, 272 N.W.2d 43 (1978), the Nebraska Supreme Court affirmed the decision of the trial court refusing a request by the proprietor of a clothing store in York, Nebraska, using the trade name "The Depot" for an injunction against the defendant, who was operating a similar clothing store in Crete, Nebraska, under the name "The Denim Depot." The plaintiff had also taken steps to open a " 'depot' " in Fairbury, Nebraska, *id.* at 747, 272 N.W.2d at 44, and to change the name of his store in Seward, Nebraska, to "The Depot." The *Dahms* court explained:

Under our economic system, competition between enterprises is thought to be a desirable objective. Protection of trademarks promotes this objective in two ways: The trade names allow the public to distinguish between the goods and services of the various merchants, and the merchants reap the benefits (or suffer the consequences) of their efforts.

201 Neb. at 746, 272 N.W.2d at 44.

The *Dahms* court noted that no precise rules can be laid down to determine whether trade name confusion exists or is likely to arise. It further stated that among the considerations are (1) degree of similarity in the products offered for sale; (2) geographic separation of the two enterprises and the extent to which their trade areas overlap; (3) extent to which the stores are in actual competition; (4) duration of use without actual confusion; and (5) actual similarity, visually and phonetically, between the two trade names. In considering these factors, the *Dahms* court found some overlap of the trade areas for York and Crete and a substantial similarity of the parties' products in certain areas. The court also found that there was some competition between the parties' stores. The court stated, "In a close case, those factors

would add to the weight of the plaintiff's evidence in that they would increase the likelihood of confusion between two similar names." *Id.* at 747, 272 N.W.2d at 45.

The *Dahms* court considered the determinative factor in the case to be the actual degree of similarity between the two names. The court was unable to find that the two names were so alike that they were likely to cause confusion in the minds of the public. It stated: "Whether seen side-by-side, or at different times, the names, although similar, are distinguishable. One trade name is not an infringement of another if ordinary attention of persons or customers would disclose the differences." *Id.* at 748, 272 N.W.2d at 45, citing *Miskell v. Prokop*, 58 Neb. 628, 79 N.W. 552 (1899). The *Dahms* court went on to state:

> We should not be understood to say that the addition of a single word will always entitle a defendant to judgment in a suit alleging infringement of a trade name. We simply hold that the plaintiff in this case has failed to show, as he must, either actual or probable confusion.

201 Neb. at 748, 272 N.W.2d at 45.

The most recent Nebraska case on this issue is *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994). In that case, the plaintiff used the trade name "Nebraska Irrigation" in connection with its business of selling parts and equipment for center-pivot irrigation systems. The plaintiff, who did not sell or install complete irrigation systems, had 1,200 customers located around the world, 400 of which were in Nebraska. The plaintiff's manufacturing plant was located in Columbus, Nebraska, and it had annual sales of approximately $2.5 million. The defendant, who used the trade name "Nebraska Irrigation Sales & Equipment," was a retailer of complete irrigation systems, and also sold parts and provided service. Ninety percent of its sales were new installations of a particular brand of irrigation system, with the other 10 percent coming from services and replacement parts. The defendant's annual sales were approximately $900,000.

The trial court granted an injunction, but on appeal, the Nebraska Supreme Court vacated that decision and remanded the cause with directions to dismiss the petition. The Supreme Court found that the combination of "Nebraska" and "Irrigation" was a

trade name that could be protected against unfair competition. The Supreme Court then turned to an analysis of the case under the factors set forth in *Dahms v. Jacobs*, 201 Neb. 745, 272 N.W.2d 43 (1978). In *Nebraska Irrigation, Inc. v. Koch, supra*, the Supreme Court noted that while both parties sold irrigation equipment, most of the defendant's sales involved sales of complete irrigation systems of exclusively one brand. The plaintiff sold parts primarily to resellers. The defendant regularly provided repair and installation service, something not provided by the plaintiff. The Supreme Court found that the degree of similarity between the parties' products was not great. With regard to geographic considerations, the Supreme Court noted that the parties operated out of different locations, with the plaintiff's trade area extending throughout the western United States and into some foreign countries and the defendant's trade area, which only extended within a 100-mile radius of Imperial, Nebraska, overlapping only a relatively small portion of the plaintiff's trade area.

The Supreme Court next considered the extent to which the parties were in actual competition, stating that this factor should be considered to determine how much weight to give to the overlap in trade areas. The record reflected that the parties were not selling their products to the same customers, and the Supreme Court concluded that the extent to which the two parties were in actual competition was minimal. As to the duration of the use of a name without actual confusion, the plaintiff testified that he had been held accountable on numerous occasions for prices listed in the defendant's advertisements, but did not testify to any specific instances of confusion. The Supreme Court accordingly found no evidence of confusion. The record failed to establish that the defendant intended to avail himself of the plaintiff's reputation or to transact business as "Nebraska Irrigation." Finally, in considering the actual similarity of the parties' names, the Supreme Court found that a careful examination of the names "Nebraska Irrigation" and "Nebraska Irrigation Sales & Equipment" would prevent the public from being deceived and that the names, whether seen side by side or at different times, were distinguishable.

The Supreme Court concluded that although there existed an overlap in the parties' trade areas, the products offered by the

parties were not substantially similar and the parties did not compete for the same customers. The Supreme Court gave greater weight to the fact that the two names were not so similar that they were likely to cause confusion in the public's minds. Because the plaintiff failed to meet its burden of proving by a preponderance of the evidence either actual or probable confusion in the use of the trade names "Nebraska Irrigation" and "Nebraska Irrigation Sales & Equipment," the Supreme Court vacated the decision of the district court and remanded the cause with directions to dismiss the plaintiff's petition.

We turn next to an application of the foregoing principles to the present case.

*Degree of Similarity Between*
*Products Offered for Sale.*

Equitable Building and Loan is a full service bank and offers a wide range of banking services not offered by Equitable Mortgage, whereas Equitable Mortgage only offers real estate mortgages. While Equitable Building and Loan also offers real estate mortgages, those mortgages are only in the form of conventional loans. Equitable Mortgage offers primarily subprime loans, although it also offers some conventional loans. Equitable Building and Loan does not offer subprime loans, but has a process of referring that type of business to other financial institutions and sometimes receives a fee for these referrals. We conclude that there is some degree of similarity in the products offered for sale by the parties, namely, conventional real estate mortgages, but that each party focuses on or offers certain products either not offered or not specialized in by the other party. The degree of similarity between the parties' products is small.

*Geographic Separation of Parties*
*and Overlap of Trade Areas.*

The parties both have offices located in Grand Island. Equitable Building and Loan's trade area extends within a 50- to 60-mile radius of Grand Island in Hall County and into some of the surrounding counties. Equitable Mortgage's trade area extends throughout Nebraska, as well as Missouri, Iowa, and South Dakota, with future business anticipated in Kansas. Thus,

Equitable Mortgage's trade area overlaps the entirety of Equitable Building and Loan's trade area.

*Extent to Which Parties Are in Actual Competition.*

Both parties have clientele seeking mortgage loans on real estate, and both are lending in the same geographical area. However, Equitable Mortgage does mostly subprime lending, which is something that Equitable Building and Loan refers out to other financial institutions. The parties' actual competition arises from the offer of conventional mortgage loans. In the year 2000, Equitable Mortgage closed 11 conventional real estate loans while Equitable Building and Loan closed between 300 and 350 such loans. In other words, Equitable Mortgage closed only 3 to 4 percent of the total conventional real estate loans closed by Equitable Building and Loan. Further, the parties market themselves differently. Equitable Building and Loan has an extensive advertising budget and advertises widely to the public through newspapers, billboards, radio, and other media. Its advertising emphasizes that it is a full-service bank. Equitable Mortgage utilizes yellow pages advertising, although to a lesser extent than Equitable Building and Loan. It markets itself directly to other financial professionals and seeks referrals of customers. We find that the degree of actual competition between the parties is minimal.

*Duration of Use of Name Without Actual Confusion.*

Evidence was presented showing receipt of misdirected telephone calls, misdelivered mail, and customers entering the wrong business office. Some of the "confusion" noted in the record seems to stem more from the fact that both parties have employees with the first name "Mark," rather than from any confusion on the part of actual customers over with which company they desired to do business. In fact, the specific examples of confusion cited in the record are not instances where a customer was confused or misled into thinking he or she was doing business with Equitable Building and Loan, when he or she was actually doing business with Equitable Mortgage. Rather, the examples in the record are more in the nature of miscommunication between customers and other individuals that the parties were already

dealing with in various transactions. The type of confusion presented in the record is the kind that ordinary efforts can discern and avoid. Further, many of the "confused" individuals were professionals who have presumably corrected their initial confusion between the parties. There is nothing in the record to suggest that Equitable Mortgage had any intent, when it opened an office in Grand Island, to capitalize on the name recognition established by Equitable Building and Loan.

It appears that some of the confusion in the record arises because Equitable Building and Loan began using only the word "Equitable" in its advertising and communication with the public. While Equitable Building and Loan may have a valid, protectable interest in their full name (an issue not directly decided by the trial court), it does not follow that a protectable trade name exists in the word "Equitable." Nebraska case law holds that generic words, whose primary meaning is merely descriptive of the business to which they are applied or which are such as are in common use for that purpose, cannot be exclusively appropriated as a trade name. *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994). As a matter of law, no one is entitled to the exclusive use of descriptive adjectives of the language. These terms may be used by all the world in an honestly descriptive and nondescriptive manner. *Id.*

*Actual Similarity of Trade Names.*

We give great weight to this factor, as did the Nebraska Supreme Court in *Dahms v. Jacobs*, 201 Neb. 745, 272 N.W.2d 43 (1978), and *Nebraska Irrigation, Inc. v. Koch, supra.* A careful examination of the names "Equitable Mortgage" and "Equitable Building and Loan" would prevent the public from being deceived. We find that the names, whether seen side-by-side or at different times, are distinguishable. We also note that the logos used by each party are very distinct and readily distinguishable.

In summary, based upon our de novo review, we conclude that Equitable Building and Loan is not entitled to protection of the trade name "Equitable." The evidence presented did not show that customers were likely to transact business with Equitable Mortgage under the belief that they are dealing with Equitable Building and Loan. Nothing in the record supports a conclusion

that Equitable Mortgage attempted to misrepresent or deceive the public into the erroneous belief that they were dealing with Equitable Building and Loan, unlike the situation in *Personal Finance Co. v. Personal Loan Service*, 133 Neb. 373, 275 N.W. 324 (1937). Finally and most importantly, ordinary attention discloses the difference between the two names. Equitable Building and Loan has failed to show that actual or probable confusion sufficient to restrict lawful competition between the parties has occurred by Equitable Mortgage's use of its name in the Grand Island area.

## CONCLUSION

For the above reasons, we reverse, and remand with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

INBODY, Judge, dissenting.

I respectfully disagree with the majority opinion. It appears to me that application of established Nebraska law to the facts in this case requires the affirmance of the decision of the district court granting Equitable Building and Loan an injunction against Equitable Mortgage's use of the name "Equitable."

## ANALYSIS

The law in Nebraska is clear that in a case for trade name infringement, the plaintiff has the burden to prove by a preponderance of the evidence the existence of (1) a valid trade name entitled to protection and (2) a substantial similarity between the plaintiff's and the defendant's names, which would result in either actual or probable deception or confusion by ordinary persons dealing with ordinary caution. *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994).

Equitable Mortgage does not raise as an assignment of error that the district court erred in its implicit finding that "Equitable" constitutes a valid trade name entitled to protection. Because Equitable Mortgage has not raised a challenge on this issue, it must be assumed for the purposes of this appeal that "Equitable" is a valid trade name. Thus, I proceed to address whether there is a substantial similarity between the parties' names, which would

result in either actual or probable deception or confusion by ordinary persons dealing with ordinary caution.

The likelihood of confusion in the use of trade names can be shown by presenting circumstances from which courts might conclude that persons are likely to transact business with one party under the belief they are dealing with another party. If the similarity is such as to mislead purchasers or those doing business with the company, acting with ordinary and reasonable caution, or if the similarity is calculated to deceive the ordinary buyer in ordinary conditions, it is sufficient to entitle the one first adopting the name to relief. *Id.* In determining whether trade name confusion exists or is likely to arise, a court may consider, inter alia, these factors: (1) the degree of similarity in the products offered for sale; (2) the geographic separation of the two enterprises and the extent to which their trade areas overlap; (3) the extent to which the stores are in actual competition; (4) the duration of use without actual confusion; and (5) the actual similarity, visually and phonetically, between the two trade names. See *id.*

In considering these factors, I note the applicable standard of review: In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002).

*Degree of Similarity Between*
*Products Offered for Sale.*

Both parties offer mortgage lending. Equitable Building and Loan offers, among other things, conventional loans, and although it does not offer subprime loans, it has a process of referring those loans to other financial institutions, for which it sometimes receives a referral fee. Equitable Mortgage offers mostly subprime loans, but also offers conventional loans. Therefore, in my opinion, the products offered for sale in the mortgage lending area by both parties are very similar.

*Geographic Separation.*

Equitable Building and Loan operates within a 50- to 60-mile radius of Grand Island. Equitable Mortgage's trade area extends throughout Nebraska, Missouri, Iowa, and South Dakota, with future business anticipated in Kansas. Both parties have offices in Grand Island, with their main offices located one and a half blocks apart. Thus, Equitable Mortgage's trade area overlaps the entirety of Equitable Building and Loan's trade area, and the geographic separation of the parties, at least in the Grand Island area, is very small.

*Extent of Actual Competition.*

Both parties do mortgage lending in the same geographical area. Equitable Building and Loan offers conventional loans and refers subprime loans out to other financial institutions, for which it sometimes receives a referral fee. Equitable Mortgage offers mostly subprime loans, but also offers conventional loans. In fact, in 2000, 26 percent of the loans closed by Equitable Mortgage were conventional loans. Thus, in my opinion, both parties have a high degree of actual competition, which I believe is further borne out by the following testimony: Olson, vice president of Equitable Mortgage, testified that both parties share the same customers. Tracy, office manager for Equitable Mortgage's Grand Island office, testified that both parties offer home loans and home equity loans. Further, the vice president and chief lending officer of Equitable Building and Loan testified that about 75 percent of Equitable Building and Loan's business consists of mortgage loans.

*Duration of Use of Name Without Actual Confusion.*

The evidence adduced at trial established that since February 2000, when Equitable Mortgage's Grand Island office opened, and continuing until the time of trial, telephone calls intended for one party were placed to the other party; mail and packages intended for one party, even though properly addressed, were delivered to the other party; and customers entered the wrong business office. Kersten, a loan officer with Equitable Building and Loan, testified that on two or three occasions, he had had members of the general public call him and ask "if we were the Equitable downtown that's always been here" or "the other

company." It is my opinion that this evidence exhibits the substantial likelihood that those doing business with the company, acting with ordinary and reasonable caution, will be misled and that the similarity is likely to deceive an ordinary customer in ordinary conditions.

The majority states: "It appears that some of the confusion in the record arises because Equitable Building and Loan began using only the word 'Equitable' in its advertising and communication with the public." However, the evidence establishes that in late 1998 or early 1999, Equitable Building and Loan began identifying itself as "Equitable" in advertising and through its greeting upon answering incoming telephone calls. This identification by Equitable Building and Loan as "Equitable" began at least 1 year before Equitable Mortgage opened its office in Grand Island in February 2000.

Further, even though Equitable Building and Loan had only recently begun to emphasize the trade name "Equitable" in its advertising, it had spent well over 100 years and a considerable amount of money establishing itself as the "Equitable" in the Grand Island area and making it synonymous with real estate mortgages. Equitable Building and Loan has an extensive advertising budget and advertises widely to the public through the yellow pages, newspapers, billboards, radio, and other media, whereas Equitable Mortgage utilizes yellow pages advertising and direct marketing to financial professionals, seeking customer referrals. A real estate agent testified that in approximately late 1999 or early 2000, "the established name for 'Equitable' was Equitable Building and Loan."

The majority emphasizes that "many of the 'confused' individuals were professionals who have presumably corrected their initial confusion between the parties." One of the professionals who encountered confusion was the current president of Equitable Building and Loan, who was employed by another bank when Equitable Mortgage's Grand Island office opened. He testified that "when [Equitable Mortgage] first came out, I had . . . a question but as a member of the financial community, I was able to discern the difference." Additionally, there was evidence that the names of the parties caused confusion among attorneys and real estate agents.

In my opinion, the fact that professionals were confused by the two "Equitable" mortgage lenders in the Grand Island area is extremely probative of the likelihood that confusion may lead parties to conduct business with one party under the belief they are dealing with another party. If professionals, who deal with the mortgage companies on a daily, weekly, or monthly basis are confused, then how likely is it that an "average Joe" who may only deal with one of the companies once every several years will be confused?

Finally, the majority contends that "[t]here is nothing in the record to suggest that Equitable Mortgage had any intent, when it opened an office in Grand Island, to capitalize on the name recognition established by Equitable Building and Loan." While the initial intent to capitalize on the name recognition may not have been present, in my opinion, the persistence of Equitable Mortgage in continuing to hold itself out as "Equitable" indicates that the trade name is of some value to it. See *Riggs Optical Co. v. Riggs*, 132 Neb. 26, 270 N.W. 667 (1937).

### *Similarity of Trade Names.*

Finally, I consider the similarity between the trade names. The district court found that Equitable Building and Loan's use of the trade name "Equitable" should be protected. Equitable Mortgage likewise began holding itself out under the trade name "Equitable" at least 1 year after Equitable Building and Loan did so. Therefore, the trade name which is the subject of the district court's order of injunction is identical.

### CONCLUSION

In sum, after conducting a de novo review of the factual questions and giving weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another, it is my opinion that when considering the factors enunciated by the Nebraska Supreme Court for determining whether trade name confusion exists or is likely to arise, each of the factors—the degree of similarity in the products offered for sale, the geographic separation of the two enterprises and the extent to which their trade areas overlap, the extent to which the stores are in actual competition, the duration of use without actual

confusion, and the actual similarity between the two trade names—is resolved in favor of Equitable Building and Loan.

Therefore, in my opinion, Equitable Building and Loan has established that actual confusion has occurred by Equitable Mortgage's use of the name "Equitable" in the Grand Island area. Therefore, I would affirm the district court's injunction prohibiting Equitable Mortgage from using the name "Equitable" in connection with its business.